FILED
2021 Jun-11 PM 01:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

- 4 -

permit states to run criminal background checks on permit holders on a regular basis; nor does it require FFLs to check the validity of qualifying permits prior to transferring a firearm to a permit holder.

GAO recommended that the Secretary of the Treasury consider developing regulations that would require States to implement point-of-purchase verification procedures, whereby the current validity of concealed carry permits must be verified by licensed gun dealers before transferring firearms to permit holders. On November 25, 2002, the Homeland Security Act was enacted, transferring responsibility for enforcement of the GCA to the Attorney General. Shortly thereafter, Treasury contacted GAO to recommend that this issue be forwarded to the Attorney General for consideration. It is our understanding that GAO has concurred in this recommendation.

## Recommendations

1.    **ATF Should Take Immediate Action with Respect to States that are Failing to Conduct NICS Checks on Renewals.**

We recommend that ATF immediately send letters to the States that are not conducting NICS checks for renewals, advising them that unless this problem is immediately resolved, ATF will withdraw its recognition of these permits as alternatives to a NICS check under the Brady law. The resolution of this issue should include the State's agreement to conduct NICS checks on all current permit holders who did not get a check at the time a permit was issued or renewed, and a commitment to revoke the permits of any prohibited persons who received permits as a result of the State's failure to conduct a NICS check.

2.    **ATF Should Enter Into MOUs With All Permit States, Clearly Setting Forth the States' Responsibilities.**

The survey reveals that the majority of the permit States need to take steps to amend their permit procedures. For the most part, the problem concerns enforcement of the prohibition on receipt of firearms by nonimmigrant aliens. However, in many of the States, it appears that the permit authorities are not consistently denying the applications of all individuals who are prohibited under Federal law. In some cases, this is because of a misperception on the part of the permit authorities with regard to their obligation to deny permits to individuals prohibited under Federal law. In some cases, this is because of the lack of oversight or authority over the judges or sheriffs that have responsibility for issuing the permits.

In May of 2003, the FBI will hold its annual conference with the States that act as Point of Contact (POC) States for NICS. For the first time, the FBI will be including the permit States at this conference. Accordingly, the conference represents the ideal opportunity for ATF to reinforce the standards applicable to the permit States, and find out exactly what the permit States are doing.

ATF000626

- 5 -

We recommend that ATF draft a standard memorandum of understanding with each permit State. The MOU should set forth the specific responsibilities of the permit States with regard to initiating NICS checks for all permits (including renewals); for disqualifying all applicants prohibited under Federal, State, or local law; and for amending permit forms to include all information necessary to enforce the nonimmigrant alien prohibition.

The MOUs should also designate the official(s) at the State level who have oversight and training authority over the employees who actually issue permits. These officials should be responsible for ensuring that the procedures set forth in the MOU are actually followed. It should be noted that this may cause problems for those States in which the permit authority is decentralized and in the hands of judges or sheriffs. We recommend that ATF take the position that unless the State can assume some sort of oversight over the permit officials, the State permits should not qualify.

Finally, the MOUs should also include "best practices" on issues that are not specifically covered by the criteria set forth in the statute or current regulations. For example, the Brady law does not require States to periodically initiate background checks on current permit holders, and it is arguable that the statute's specific recognition of permits as Brady alternatives for a period of 5 years means that Congress did not intend that such permit holders should be subjected to background checks at more frequent intervals. However, GAO has raised a valid concern about permit holders who may incur firearms disabilities after they receive permits.

Many of the permit States already have some sort of mechanism for tracking criminal convictions of permit holders, and the States take steps to revoke such permits. We recommend that the MOUs include "best practices" on this issue, and set forth the steps that the State is willing to take to ensure that permits are revoked in these circumstances.

The draft MOUs should be distributed at the May conference and ATF should set a deadline for reaching agreement with the permit States on these issues. In the event that agreement cannot be reached on these issues, ATF should issue letters to the FFLs in these States, advising them that the State permits no longer qualify as alternatives to a Brady check.

3.    **GAO Report**

We recommend that DOJ send a response to the GAO, advising that ATF is in the process of evaluating the procedures used by the permit States, and explaining some of the steps that will be taken. The response should explain that ATF is attempting to resolve this problem through the MOU process rather than amending the regulations.

Approve: _____      Disapprove:_____      Let's Discuss:_____

ATF000627



**DEPARTMENT OF THE TREASURY**
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
WASHINGTON, DC 20226

JUL 2 3 2002

## OPEN LETTER TO ALL STATE AUTHORITIES ISSUING FIREARMS PERMITS THAT QUALIFY AS ALTERNATIVES TO A NICS CHECKS UNDER THE PERMANENT PROVISIONS OF THE BRADY LAW

The Bureau of Alcohol, Tobacco and Firearms (ATF) has advised Federal firearms licensees in your State that certain permits to possess, acquire or carry firearms qualify as exceptions to the background check requirements of the Brady law. In order to issue a permit that qualifies as a Brady alternative, the State agency issuing the permit must first initiate a background check through the National Instant Criminal Background Check System (NICS). In addition, the State must deny a permit to anyone prohibited from possessing a firearm under Federal, State, or local law.

Pursuant to a recent directive by the Department of Justice, all NICS checks now include a mandatory Immigration Alien Query (IAQ) to the Immigration and Naturalization Service (INS) for individuals who are not citizens of the United States. Accordingly, background checks performed in connection with the issuance of permits that qualify as alternatives under the Brady law ("qualifying permits") must now include an INS query for all applicants who are not citizens of the United States. Because of the important public safety issues involved, we are sure that you will understand the need to implement this initiative as expeditiously as possible.

### New Requirements Applicable to NICS Checks for Aliens

On February 5, 2002, ATF published temporary regulations implementing the statutory provisions prohibiting the possession or receipt of firearms by nonimmigrant aliens. These regulations took effect on February 19, 2002. At the same time, the Justice Department implemented new procedures for contacting the INS in connection with a NICS check. The FBI has advised us that the INS query is now an integral part of the NICS check for individuals who are not citizens of the United States.

Accordingly, in order to satisfy the standards set forth in the Brady law and the implementing regulations, a State must include the INS query for non-citizens as part of the NICS check performed prior to the issuance of a qualifying permit. A NICS check that does not include the INS query for individuals who are not U.S. citizens will not satisfy the standards set forth in ATF's regulations for qualifying permits.

### How to Initiate an INS Query

The FBI has advised us that there are several different ways for States to ensure that NICS checks include the required queries to the INS for non-citizens:

- States may initiate INS queries through NLETS messages. This option already is available to States.

ATF000634

- 2 -

- States may ask the FBI to do NICS checks (including the INS query for aliens) in connection with the issuance of a firearms permit, either as part of a fingerprint card check or as a separate name-based check. The INS query can only be conducted if information regarding citizenship is provided to the FBI.

- As of July 23, 2002, States may use a software upgrade provided by the FBI that will incorporate the INS query as an automatic part of a NICS check. This upgrade was developed pursuant to the Attorney General's direction to the FBI to reconfigure the basic NICS query as soon as practicable to automatically generate an IAQ if the identifying information indicates that the individual is not a United States citizen.

### New Mandatory Fields for NICS Checks on Aliens

Regardless of how the INS query is initiated, an IAQ cannot be completed unless the State provides certain mandatory information to the INS. In addition to the mandatory fields set forth in the NICS regulations (name, sex, race, complete date of birth, state of residence), the FBI has advised that certain other fields will now be considered mandatory in order to accurately process a NICS check for individuals who are not citizens of the United States. These new mandatory fields include the applicant's country of citizenship, place of birth, and INS-issued alien or admission number. In addition, if an individual claims to be a nonimmigrant alien who is exempt from the firearms prohibition under Federal law, the NICS check must include information about the basis for the claimed exemption.

Thus, in order to do a NICS check in connection with the issuance of a qualifying permit, the State agency issuing the permit must first determine if the applicant is a citizen of the United States. If the applicant is not a U.S. citizen, the issuing authority must obtain the individual's country of citizenship, place of birth, and INS-issued alien or admission number. Finally, if applicable, the issuing authority must determine the basis for the applicant's claimed exemption from the nonimmigrant alien prohibition.

### Optional Attachment to Permit Application Forms

ATF recognizes that many States do not currently obtain this information on their permit application forms, and that it may take some time to revise those forms to get the necessary information from applicants who are not U.S. citizens. As an interim measure, we are attaching a document that States may wish to use as an attachment to their permit application forms. The first question asked is whether the individual is a citizen of the United States. If the answer is "yes," there is no need for the applicant to fill in the rest of the information. If the answer is "no," the applicant must provide the necessary information regarding his or her country of citizenship, place of birth, and INS-issued alien or admission number. In addition, if an individual claims to be a nonimmigrant alien who is exempt from the prohibitions under Federal law, the applicant must provide the basis for the claimed exemption.

Please note that use of this attachment is voluntary, and we encourage you to revise the questions as necessary to conform to your existing application forms. For example, if your State's current permit application form already asks about the citizenship of the applicant, you may wish to

ATF000635

- 3 -

provide the attachment only to those individuals who have already indicated on the application that they are not citizens of the United States. Whether you choose to use the attached document or not, it will be necessary to obtain the required information in order to initiate NICS checks on applicants who are not U.S. citizens.

### Information on the Nonimmigrant Alien Prohibition

In order to deny permits to all applicants prohibited under Federal law, States that issue qualifying permits must interpret the information obtained from the NICS check in order to determine whether applicants who are aliens are prohibited from possessing firearms under Federal law. As you know, aliens who are unlawfully or illegally in the United States are prohibited from possessing or receiving firearms. In addition, there is a general prohibition against the possession or receipt of firearms by nonimmigrant aliens; however, this prohibition is subject to certain exceptions, including an exception for individuals who have a valid hunting license from any State. Before issuing a permit to an individual who claims to fall within one of these exemptions, the issuing authority should examine available documentation to verify that the exemption is applicable.

Further information about the nonimmigrant alien prohibition is available on ATF's website at http://www.atf.treas.gov. States with specific questions about the nonimmigrant alien prohibition should contact ATF for additional information.

### Contact Numbers for Further Information

If you have any questions about how to initiate the INS query for non-citizen permit applicants, please contact Robin Marsh at the FBI's NICS Operations Center at (304) 625-7399. If you have any questions about interpreting the nonimmigrant alien prohibition, or how to ensure that your State's permits continue to qualify as alternatives to a NICS check under the provisions of the Brady law, please contact ATF's Firearms Programs Division at (202) 927-7770. ATF will be contacting your agency in the near future to learn how you are planning to comply with these new requirements.

Thank you for your cooperation on this matter.

Sincerely yours,

John P. Malone
Assistant Director
(Firearms, Explosives and Arson)

Attachment

ATF000636

## ÓPTIONAL SUPPLEMENTARY QUESTIONS TO IMPLEMENT FEDERAL LAW

**Prohibitions applicable to certain aliens.** Federal law makes it unlawful for aliens who are illegally or unlawfully in the United States to receive or possess firearms. In addition, subject to certain exceptions, aliens who are in a nonimmigrant status are prohibited from possessing or receiving firearms in the United States. A nonimmigrant alien is not subject to this prohibition if the alien (1) is in possession of a valid hunting license or permit lawfully issued in the United States; (2) is an official representative of a foreign government who is accredited to the United States Government or his or her government's mission to an international organization having its headquarters in the United States; or (3) has received a waiver from the prohibition from the Attorney General of the United States. See 18 U.S.C. 922(y)(2) for additional exceptions. In order to determine whether applicants who are not U.S. citizens are prohibited from possessing firearms under Federal law, it is necessary to obtain answers to the following questions.

1.    Name: _____.

2.    Are you a citizen of the United States?    _____.

*If the answer to Question 2 is "yes," there is no need to answer questions 3 - 8. Go directly to the certification statement in question 9.*

3.    What is your country of citizenship? List more than one if applicable.

_____.

4.    What is your place of birth?    _____.
                                        (City, Country)

5.    What is your INS-issued alien number or admission number?    _____.

6.    Are you an alien illegally in the United States?    _____.

7.    Are you a nonimmigrant alien?    _____.

*If the answer to question 7 is "no", there is no need to answer question 8. Go directly to the certification statement in question 9.*

8a.    Do you fall within any of the exemptions to the nonimmigrant alien prohibition set forth in 18 U.S.C. 922(y)?    _____.

8b.    If you answered "yes" to question 8a, under which exemption do you fall? Please attach documentation to support your entitlement to the claimed exemption, if applicable.

_____.

9. I certify that the above answers are true and correct.

_____    _____
Applicant's signature         Date

ATF000637

## Alabama NICS Alternate Permits

- The Brady Act generally requires Federal firearms licensees (FFLs) to initiate a National Instant Criminal Background Check System (NICS) check before transferring a firearm to an unlicensed person.

- There are some limited exceptions to this rule; one of these exceptions allows FFL to transfer to non-licensed individuals who possess certain state-issued permit to possess, carry or acquire firearms (commonly referred to as "NICS alternates").  Most commonly these permits are known as "concealed carry" or "carry permits."
    - For a state-issued permit to qualify as a "NICS alternate" the holder of the permit must be subject to a state/county-run NICS check within the past 5 years.

    - If the "NICS Alternative" permit applicant is a non-U.S. Citizen, the NICS check for the issuance of the permit also must include an Immigration Alien Query (IAQ), which involves the provision of specific data about the applicant.

- An Alabama statue, Ala. Code Section 13A-11-75, authorizes county sheriffs to issue "Permits to Carry a Pistol in Vehicle or Concealed on Person."   This permit is commonly referred to as a "CPP."
    - Consistent with the requirements of the Brady law, the Alabama statue requires that sheriff's conduct a full NICS check (including provision of IAQ data when applicable) before issuance of a CCP.

- Per a request from the Alabama Attorney General, in 2015 ATF certified that CCPs issued in compliance with the statute qualify as a "NICS Alternative."

- In 2017, the FBI (which operates the NICS system) conducted an audit of Alabama's NICS usage.  The audit revealed that some Alabama Sheriffs were issuing CPPs without conducting the required NICS/IAQ checks.

ATF000674

- Following issuance of the FBI audit findings, ATF worked closely with Alabama's Attorney General's office to provide training to Sheriffs on steps necessary to comply with the NICS/IAQ requirements.

- The Alabama AG's Office fully cooperated with ATF, completing compliance training with all Sheriff's offices by April 2018.

  - ATF continued discussions with the Alabama AG's office to enhance compliance throughout 2018 and into 2019.

  - ATF also monitored compliance through its FFL inspection process.

- FBI conducted another audit of Alabama NICS use in 2018.  The results of that audit were provided to ATF in 2019.

  - **Unfortunately the FBI audit revealed that Alabama Sheriffs continued to issue CCPs without completing the necessary NICS/IAD process.**

  - Results of routine ATF compliance inspections of Alabama FFLs confirmed that findings of FBI's audit, including specific instances where prohibited persons had obtained firearms using improperly issued CPPs.

- In light of the continuing non-compliance and corresponding risk to public safety risk, on July 22, 2019, ATF notified the Alabama AG that it had revoked the certification of CPPs as NICS alternative, and advised FFLS that CPP could no longer be used in lieu of the FFL conducting the NICS check and providing IAQ information.

- ATF has provided specific, detailed guidance to the Alabama AG on the steps necessary for the state to request re-certification of CCPs as NICS alternatives, and will continue working closely with AG Marshall and his staff to enhance public safety.

ATF000675



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco, Firearms and Explosives

*Enforcement Programs and Services*

`JUL 2 2 2019`

*Washington, DC 20226*

www.atf.gov

Honorable Steve Marshall, Attorney General
State of Alabama
P.O. Box 300152
Montgomery, Alabama 36130-0152

Dear Attorney General Marshall:

This letter is to inform you that the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has determined that an Alabama Permit to Carry a Pistol in Vehicle or Concealed on Person (CCP permit) no longer qualifies as an alternative to a National Instant Criminal Background Check System (NICS) check which is otherwise required prior to the transfer of a firearm by a Federal firearms licensee (FFL) to an individual.

The federal Brady law, codified at 18 U.S.C. § 922(t), generally requires FFLs to initiate a NICS background check before transferring a firearm to an unlicensed person. The Brady law allows an exception to the NICS check requirement for holders of qualifying state-issued permits to possess, carry, or acquire firearms. Permits issued within the past 5 years by the state in which the transfer is to take place qualify as alternatives to a NICS check if the law of the state provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official, including NICS check results, does not indicate that possession of a firearm by the applicant would be in violation of federal, state, or local law. See 18 U.S.C. § 922(t)(3) and 27 C.F.R. § 478.102(d)(1). The legislative history of the Brady law makes clear that a NICS background check must be conducted before a state-issued permit can qualify as an alternative:

> New subsection (t) would provide that these background check requirements would be inapplicable to firearm transfers in three circumstances: (1) The transferee has, within the five years preceding the transfer and after having his or her criminal background checked by a State or local government, received from his or her State or residence a permit that allows him or her to possess a firearm; ...

H.R. Rep. No. 103-344 (Public Law 103-159) (emphasis added).

On February 24, 2016, ATF issued an Open Letter to All Alabama FFLs informing them that ATF had reviewed Ala. Code § 13A-11-75 and determined that Alabama's CCP permits issued on or after August 1, 2013, qualified as an alternative to a NICS check. ATF's determination was based on a full NICS check being conducted by an authorized government official pursuant to Ala. Code § 13A-11-75(b), and if the check revealed that the individual was prohibited from

ATF000676

Honorable Steve Marshall, Attorney General
State of Alabama

possessing a firearm under federal or state law, the applicant being denied pursuant to Ala. Code § 13A-11-75(a)(1).[1] This determination was also based, in part, on an Immigration Alien Query (IAQ) being conducted if a non-U.S. citizen applied for a CCP permit, and that all CCP permit application forms, regardless of the county of issuance, required the applicant's place/country of birth and an alien registration or admission number pursuant to Ala. Code § 13A-11-75(e). Otherwise, the IAQ cannot be conducted.

In February 2016, the Federal Bureau of Investigation, Criminal Justice Information Services Division Audit Unit (CJIS), conducted an audit to determine Alabama's compliance with the use of NICS. CJIS determined during the audit that many counties were not conducting the required NICS background checks before issuing a CCP permit. CJIS strongly recommended that each county be required to run the compulsory checks on all CCP permits issued since August 1, 2013, and requested that the Alabama Attorney General's Office assure that each county completes the required checks for each new or renewed permit issued. On March 12, 2016, your office issued a letter to all 67 county sheriffs advising them of both the requirement and importance of conducting a NICS background check prior to the issuance of a CCP permit.

Since September 2017, ATF Deputy Assistant Director Curtis Gilbert has been in regular contact with Maury Mitchell, Strategic Advisor/CSO, Alabama Law Enforcement Agency, to provide guidance and assistance with respect to the alternate permit requirements of the Brady law. Mr. Mitchell has advised that, since April 2018, all sheriffs have been trained on the Brady law requirements. Earlier this year, however, CJIS issued questionnaires to the county sheriffs to evaluate Alabama's compliance with the use of NICS, and determined that the number of CCPs issued by sheriffs without conducting a NICS check continues to be substantial. Moreover, through routine compliance inspections of FFLs in Alabama since April 2018, ATF determined that some of the individuals to whom CCPs were issued without background checks were in fact prohibited from possessing firearms. These inspections have also indicated that some county sheriffs have not been requiring non-U.S. citizen CCP permit applicants to submit the information necessary to run an IAQ.

As we have emphasized in our discussions, the continuing failure of some Alabama sheriffs to complete full NICS checks prior to issuance of CCP permits creates an unacceptable risk to public safety that prohibited and potentially dangerous individuals are illegally obtaining firearms. In light of the foregoing, ATF has determined that Alabama's CCP issuance process does not meet the requirements set forth in the Brady law. Consequently, effective immediately, Alabama's CCP permits no longer qualify as a NICS check alternative; ATF has issued the enclosed Public Safety Advisory to all Alabama FFLs reflecting this determination.

If the State of Alabama desires to have its CCP permits again qualify as an alternative to NICS, the following corrective measures will need to be taken:

---

[1] *See also* Ala. Code § 13A-11-75(a)(6) ("Nothing is this section shall be construed to permit a sheriff to disregard any federal law or regulation pertaining to the purchase or possession of a firearm.").

ATF000677

-3-

Honorable Steve Marshall, Attorney General
State of Alabama

1.     The State must ensure that CCP permits are only issued after an authorized government official has conducted a full NICS check, including the IAQ, and if there is a NICS denial, the prohibited applicant does not receive a CCP permit, as required by Ala. Code § 13A-11-75(a)(6) and (b);

2.     A full NICS check, including the IAQ, must be completed by an authorized Alabama official on all individuals previously issued CCP permits without a NICS check;

3.     All CCP permits previously issued to individuals found to be prohibited from receiving or possessing firearms under federal or state law must be revoked, pursuant to Ala. Code § 13A-11-75(a)(2) or other applicable law, and the permits must be recovered from those individuals; and

4.     The State must take reasonable efforts to retrieve all firearms from individuals found to be prohibited from possessing firearms under State law. Should you determine that an individual is in possession of a firearm in violation of Federal, but not State law, those cases should immediately be referred to the local ATF field office, which will take appropriate investigative steps.

Unless these corrective measures are fully implemented, ATF will be unable to accept Alabama CCP permits as a NICS alternative under the Brady law. If you have any questions, please do not hesitate to contact ATF. Likewise, if the State of Alabama is interested in establishing a permit program that meets the requirements to qualify as a NICS check alternative, ATF stands ready to provide technical guidance. Please do not hesitate to contact me directly at 202-648-█████

Sincerely yours,

Marvin G. Richardson
Assistant Director
Enforcement Programs and Services

cc:     Maury Mitchell
        Strategic Advisor/CSO for Alabama
        Alabama Law Enforcement Agency

        United States Attorneys
        Northern District of Alabama
        Middle District of Alabama
        Southern District of Alabama

ATF000678



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Enforcement Programs and Services*

July 22, 2019

*Washington, DC 20226*

[www.atf.gov](www.atf.gov)

## PUBLIC SAFETY ADVISORY TO ALL ALABAMA FEDERAL FIREARMS LICENSEES

The purpose of this public safety advisory is to notify you of an important change to the procedure you may follow to comply with the Brady Handgun Violence Protection Act (Brady Act), codified at 18 U.S.C. § 922(t), when transferring a firearm to an unlicensed person.

The permanent provisions of the Brady Act took effect on November 30, 1998. The Brady Act generally requires Federal firearms licensees (FFLs) to initiate a National Instant Criminal Background Check System (NICS) check before transferring a firearm to an unlicensed person. However, the Brady Act contains exceptions to the NICS check requirement, including an exception for holders of certain state permits to possess, carry, or acquire firearms. The law and implementing regulations provide that permits issued within the past 5 years may qualify as alternatives to the NICS check if certain other requirements are satisfied. Most importantly, the authority issuing the permit must conduct a NICS background check and must deny a permit to anyone prohibited from possessing firearms under federal, state, or local law.

On February 24, 2016, ATF issued an Open Letter to All Alabama FFLs informing them that ATF had reviewed Ala. Code § 13A-11-75 and determined that Alabama's CCP permits issued on or after August 1, 2013, qualified as an alternative to a NICS check. ATF's determination was based on the understanding that a full NICS check would be conducted by an authorized government official pursuant to Ala. Code § 13A-11-75(b) and, if the check revealed that the individual was prohibited from possessing a firearm under federal or state law, the applicant would be denied pursuant to Ala. Code § 13A-11-75(a)(1).[1] ATF also based this determination inherent in this decision was the understanding that an Immigration Alien Query (IAQ) would be conducted if a non-U.S. citizen applied for a CCP permit, and that all CCP permit application forms, regardless of the county of issuance, required the applicant's place/country of birth and an alien or admission number pursuant to Ala. Code §13A-11-75(e). Otherwise, the IAQ cannot be conducted.

Based on recent information received from the Federal Bureau of Investigation, Criminal Justice Information Services Division Audit Unit, and upon results of inspections conducted by ATF field offices, ATF has determined that, notwithstanding the express requirements of Ala. Code § 13A-11-75, Alabama CCP permits have been, and continue to be, issued to individuals without completion of a NICS check, or after a NICS denial. At least some of these permits were issued

---

[1] *See also* Ala. Code § 13A-11-75(a)(6) ("Nothing is this section shall be construed to permit a sheriff to disregard any federal law or regulation pertaining to the purchase or possession of a firearm.").

ATF000679

-2-

**LAW ENFORCEMENT ADVISORY TO ALL ALABAMA FEDERAL FIREARMS LICENSEES** (cont.)

to felons and other federally prohibited persons who used them to purchase firearms from Alabama FFLs without a NICS check.  In addition, ATF has determined that some Alabama counties have not been requiring non-U.S. citizen CCP permit applicants to submit the information necessary to run the IAQ, specifically, the place/country of birth and an alien registration or admission number.

Because county sheriffs have issued CCP permits s without completing a full NICS check, firearms have been transferred to felons and other prohibited individuals in violation of federal law, thereby creating a substantial public safety concern.  For this reason, the standards set forth in the Brady law require us to find that Alabama's CCP permits no longer qualify as a NICS check alternative**. In the interest of public safety, and effective immediately, FFLs in Alabama may no longer accept CCP permits as an alternative to a NICS check.  Unless another exception applies, a NICS check must be conducted whenever you transfer a firearm to an unlicensed person even if the individual presents an unexpired CCP permit**.

If you have any questions about Alabama's Permit to Carry Pistol in Vehicle or Concealed on Person qualifying as an alternative to the NICS check, please call ATF's Firearms Industry Programs Branch at (202) 648-7190.

Marvin G. Richardson
Assistant Director
Enforcement Programs and Services

ATF000680

| | |
|---|---|
| **From:** | Epstein, Eric M. |
| **To:** | Vann, James P.; Husselbaugh, Eileen L.; Ritt, Erika L.; Hummel, Theresa M.; Crim, Jennifer |
| **Subject:** | FW: Public Safety Advisory to Alabama Federal Firearms Licensees |
| **Date:** | Wednesday, July 24, 2019 8:31:00 AM |
| **Attachments:** | FLS_16304088.pdf<br>Denied F 4473_NIX_07-23-19.pdf<br>NTN 1012578Z0.pdf |

Fyi - I expect that we are going to see more of these.

- Eric

**Eric M. Epstein, Senior Policy Counsel (Firearms and Explosives)**
**Bureau of Alcohol, Tobacco, Firearms and Explosives**
**United States Department of Justice**
**99 New York Ave., NE, Room 6E-363**
**Washington, D.C. 20226**
**Tel: 202-648**█████
**Fax: 202-648-9620**

**From:** Lintner, Ernest A. ████████████████████
**Sent:** Wednesday, July 24, 2019 8:24 AM
**To:** Epstein, Eric M. ██████████████████; Paskalis, Anne Marie ██████████████████████;
Jacobs, Jonathan S. ██████████████████
**Subject:** FW: Public Safety Advisory to Alabama Federal Firearms Licensees

May be old news for you but just in case....

**From:** Kolb, Steven A. ██████████████████
**Sent:** Tuesday, July 23, 2019 8:03 PM
**To:** Lintner, Ernest A. ██████████████████
**Subject:** Fwd: Public Safety Advisory to Alabama Federal Firearms Licensees

Hey Ernie! Wanted to pass this along to you as a FYI.

Steven Kolb
Director, Industry Operations
Nashville Field Division
Cell ██████████████

Begin forwarded message:

> **From:** "Patrick, M. Theresa" ██████████████████
> **To:** "Kolb, Steven A." ██████████████████ "Graham, Andrew R."
> ██████████████████
> **Cc:** "Patrick, M. Theresa" ██████████████████, "Gurtler, Jared W."
> ██████████████████

ATF000681

**Subject: RE: Public Safety Advisory to Alabama Federal Firearms Licensees**

Following is a summary of events

The Public Safety Advisory to ALL Alabama FFLs dated July 22, 2019 was received this morning at 7:42 am.  I had planned to meet my IOIs at an inspection of the following FFL.  I printed several copies of the Advisory to give to the IOIs to give to FFLs.   I arrived at the premises around 10-10:30 am.  The lead IOI (IOI Jared Gurtler) provided a copy of the Advisory to the FFL and employees.  Not long afterward one of the employees came back to the room we were working in and relayed the following information.  A gentleman ▮▮▮▮▮▮▮▮▮▮ came in to purchase a firearm.  The customer presented his Alabama Pistol Permit.  The FFL advised that they were required to run a background check.  The customer said that he has purchased many firearms using his permit.  The customer further said that there was something 20 years ago and that he cleared the check for his ▮▮▮▮ license.  The customer completed the ATF Form 4473.  The FFL contacted NICS (11:53am).  NICS responded with a DENIED.  NICS record denied based on 18 USC 922(g)(9) – MCDV.   The FFL is currently searching their A&D books for additional transactions involving ▮▮ The FFL will give me an update at 18:00 hrs. when they close.  If needed, IOIs will return in the morning to complete the search.  They reopen at 9:00 am in the morning.

Attachments
Denied ATF Form 4473 completed by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮
NICS record for NTN: : ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮
▮▮▮▮
▮▮▮▮▮▮▮▮▮
▮▮▮▮
▮▮▮▮▮▮▮▮
▮▮▮
▮▮▮▮▮▮▮

Will report any updates as soon as received.

**Theresa Patrick | Birmingham II (IO) Area Supervisor**
Bureau of Alcohol, Tobacco, Firearms & Explosives | Nashville Field Division
(205) 583-▮▮▮   office | (205) 583-5951 fax  ▮▮▮▮▮▮   mobile

**From:** Kolb, Steven A. ████████████████
**Sent:** Tuesday, July 23, 2019 4:16 PM
**To:** Graham, Andrew R. ████████████████
**Cc:** Patrick, M. Theresa ████████████████
**Subject:** Re: Public Safety Advisory to Alabama Federal Firearms Licensees

10-4

Steven Kolb
Director, Industry Operations
Nashville Field Division
Cell ████████████

On Jul 23, 2019, at 3:32 PM, Graham, Andrew R. ████████████████ wrote:

> Steve, please give me the specifics on this situation: who, where, when etc. I spoke to the Director about this and the additional details are warranted to be reported up to the AGs office. This is a priority please have a BP to me this evening. Thanks
>
> Sent from my iPhone
>
> On Jul 23, 2019, at 12:45 PM, Kolb, Steven A ████████████████ wrote:
>
>> Andy, I wanted to pass this along. Below is an excerpt from an email just sent to me by one of my area supervisors:
>>
>> ***And BTW, I am at*** ████████████████ ***with my IOIs. I brought the advisory for the FFL. They just had a customer come in to buy a gun. He had a carry permit. The FFL said the permit is no longer an alternative to NICS. The customer wasn't happy because he said he bought guns before using the permit. The FFL ran the NICS check and the guy was DENIED!***
>>
>> **STEVEN A. KOLB**
>> **Director, Industry Operations**
>> **NASHVILLE FIELD DIVISION**
>> **Phone (615) 565-████**
>> **Cell** ████████████

ATF000683



**U.S. Department of Justice**

Federal Bureau of Investigation

Clarksburg, WV  26306

February 21, 2020

Ms. Marianna Mitchem
Acting, Deputy Chief of Staff
Office of the Director
Bureau of Alcohol, Tobacco, Firearms
  and Explosives
Room 5N600
99 New York Avenue, NE
Washington, DC  20226

Dear Ms. Mitchem:

      I am writing to inform the Bureau of Alcohol, Tobacco, Firearms and Explosives
(ATF) of the results of the Federal Bureau of Investigation's (FBI) Criminal Justice Information
Services (CJIS) Division audit of the National Instant Criminal Background Check System
(NICS) alternate permit process in Alabama.

      At the time of the audit, the Alabama Permit to Carry Pistol in Vehicle or Concealed
on Person (CCP) was recognized by the ATF as an "alternative" to a point of sale NICS check
initiated by Federal Firearms Licenses (FFLs), pursuant to Title 18, United States Code (U.S.C.),
Chapter 44, Section 922 (t)(3), for the purpose of a firearm within Alabama.  The FBI CJIS
Audit Unit (CAU) staff member met with the Alabama Law Enforcement Agency (ALEA) staff
members on February 2019.  The audit consisted of a review of 12 local agencies on-site and
eight local agencies remotely.  It should be noted that an additional four agencies were selected
for the audit, but did not respond to scheduling requests.

      As of February 2019, all 24 counties selected for audit were not conducting the
required NICS background check beginning August 1, 2013 prior to issuing a permit valid to
purchase a firearm as required by federal law stated in part above.

ATF000693

Ms. Marianna Mitchem·

During the audit of the aforementioned criminal justice agencies, the CAU staff identified the following areas of noncompliance:

- **POC Requirements - Background Check:  Ensure NICS background checks are conducted prior to the sale of a firearm, issuance of a permit to possess or acquire, a permit to carry, or an explosive permit in accordance with Title 18, U.S.C. § 922 (t)(1).  (*This was noted during the previous cycle.*)** .

Previously during the 2016 audit, while not a finding it was noted that as the POC, ALEA must ensure that not only the counties audited but also all counties within the state conduct the compulsory checks on all active Permits to Carry Pistol in Vehicle or Concealed issued since August 1, 2013 and adjudicate the results for eligibility under federal and state laws. A review of all 67 counties' NICS transaction totals from August 2015 – March 2016 noted that only 43 counties were conducting the required NICS checks on permits issued.  All permits issued since August 1, 2013 needed the required NICS checks conducted and the results reviewed for the federal prohibitions to determine if a permit must be revoked.

It was discovered during the audit that the agencies were unaware of the difference between a NICS check and Interstate Identification Index and that a new NICS check must be conducted for a renewal once an existing permit expired.  The POC failed to provide instruction, support, resources, and access to the local agencies that are required to complete background checks when issuing a permit.

- **POC - Conducting an IAQ:  Ensure IAQs are conducted using the correct purpose code on all non-U.S. citizens prior to the sale of a firearm, the issuance of a permit to possess or acquire, a permit to carry, or an explosive permit.**

Federal law 18 U.S.C. 922 (g) (5) prohibits aliens who are illegally or unlawfully in the U.S. ·or who are non-immigrants that do not qualify for certain exceptions from receiving or possessing firearms or ammunition.  An IAQ must be conducted whenever an applicant for an alternate permit indicates that he or she is an alien.  At every agency audited, Alabama's application for a Permit to Carry Pistol in Vehicle or Concealed on Person did not capture additional immigration-related information, including the applicant's country of citizenship, whether the person is a non-immigrant alien, and, in the case of individuals who are not U.S. Citizens, the person's U.S.-Issued Alien, or Admission number (AR#, USCIS#, or I94#). Failing to obtain this information precluded all the agencies from initiating the required IAQ with the U.S. Immigration and Customs Enforcement for all aliens to inquire about the person's immigration status and whether the person is illegally or unlawfully in the U.S.

2

ATF000694

Ms. Marianna Mitchem

- **POC Requirements - System Safeguards:  Ensure each Criminal Justice Information Services (CJIS) Division System Agency (CSA) is responsible for completing a triennial audit of all agencies with access to CJIS Systems.**

The CSA's audit program did not audit agencies for their use of the NICS.  Per the CJIS User Agreement, ALEA shall be responsible for complying with all audit requirements for use of CJIS Systems.  Each CSO is responsible for completing a triennial audit of all agencies with access to CJIS Systems through the CSA's lines.  Additionally, the CAU is mandated to conduct triennial audits of each CSA in order to verify compliance with applicable statutes, regulations, and policies.  The triennial audit is required to include a sample of criminal justice agencies.

The Greene, Henry, Washington, and Wilcox County Sheriffs' Offices refused to respond to emails or telephone calls and messages to conduct or reschedule the NICS audit.  Due to the failure to comply with audit requirements, these agencies were assessed as out of compliance for all policies assessed during the audit.

- **POC Requirements - POC, Partial-POC, or Alternate Permit Requirements:  Ensure as the POC that all local agencies are given the minimum requirements and necessary guidance to properly issue permits.**

On February 24, 2016, the ATF sent an open letter to all FFLs which advised that the Alabama's Permit to Carry Pistol in Vehicle or Concealed on Person issued on or after August 13, 2013 qualifies as an alternative to the NICS background check under the Brady Act.  At that time, the POC should have developed and implemented a plan of action to ensure all 67 counties were provided the appropriate NICS access and given training to ensure the proper application of federal and state prohibitions when adjudicating results for issuing the permits.

In the absence of POC guidance, each county had developed their own application process for the permit and have not consistently addressed the federal prohibitions as outlined in Title 18, U.S.C., § 922 (g)(1) through (g)(9) and (n).  Additionally, the POC failed to provide instruction, support, resources, and access to the local agencies that are required to complete the compulsory background checks when issuing a permit.  By not conducting the required NICS check for the issuance of the permits, the entire state is at risk for allowing a person who is not authorized under federal law to purchase a firearm unchallenged.

- **Federal Denial Criteria - Felony Conviction:  Ensure individuals are denied who have been convicted in any court of a crime punishable by a term exceeding one year in accordance with Title 18, U.S.C. § 922 (g) (1).**

3

Ms. Marianna Mitchem

The Bullock, Elmore, and Macon County Sheriffs' Offices were all unaware of potential disqualifying misdemeanor convictions. Any state offense classified by the laws of the state as a misdemeanor and punishable by a term of imprisonment of two years or more must be researched and determined to be disqualifying for the purpose of NICS. The Barbour, Covington, Geneva, Marengo, and Sumter County Sheriffs' Offices were unaware of any of the federal denial criteria requirements to deny a permit. Due to each agency's lack of knowledge of determining if a person was convicted of a crime punishable by imprisonment for over one year or a disqualifying misdemeanor, an individual could have been granted a permit thus increasing the likelihood of a prohibited individual obtaining a firearm.

- **Federal Denial Criteria - Felony Indictment: Ensure individuals are denied who are under indictment or information for a crime punishable by imprisonment for a term exceeding one year in accordance with Title 18, U.S.C., § 922 (n).**

The Barbour, Covington, Geneva, Marengo, and Sumter County Sheriffs' Offices were unaware of any of the federal denial criteria requirements to deny a permit. Due to each agency's lack of knowledge of determining if a person is under indictment or information, an individual could have been granted a permit thus increasing the likelihood of a prohibited individual obtaining a firearm.

- **Federal Denial Criteria - Active Warrant: Ensure individuals are denied who is a fugitive from justice in accordance with Title 18, U.S.C., § 922 (g) (2).**

The Barbour, Covington, Geneva, Marengo, and Sumter County Sheriffs' Offices were unaware of any of the federal denial criteria requirements to deny a permit. Due to each agency's lack of knowledge of determining if an individual is a fugitive from justice, an individual could have been granted a permit thus increasing the likelihood of a prohibited individual obtaining a firearm.

- **Federal Denial Criteria - Controlled Substance User: Ensure individuals are denied who are unlawful users of or addicted to any controlled substance per Title 18, U.S.C., § 922 (g) (3).**

The Bullock, Elmore, and Perry County Sheriffs' Offices do not deny the issuance of a permit to individuals with current or multiple drug arrests within the past five years. Title 27, C.F.R., § 478.11 includes in the definition of *Unlawful user of or addicted to any controlled substance* "a pattern of use or possession that reasonably covers the present time, e.g., a conviction for use or possession of a controlled substance within the past year [or] multiple arrests for such offenses within the past five years if the most recent occurred within the past year."

4

ATF000696

Ms. Marianna Mitchem

The Barbour, Covington, Geneva, Marengo, and Sumter County Sheriffs' Offices were unaware of any of the federal denial criteria requirements to deny a permit. Due to each agency's lack of knowledge determining if a person is an unlawful user or addicted to any controlled substance, an individual could have been granted a permit thus increasing the likelihood of a prohibited individual obtaining a firearm.

- **Federal Denial Criteria - Mental Defective: Ensure individuals are denied who are adjudicated as a mental defective or committed to a mental institution per Title 18, U.S.C., § 922 (g) (4).**

The Barbour, Covington, Marengo, and Sumter County Sheriffs' Offices were unaware of any of the federal denial criteria requirements to deny a permit. Due to each agency's lack of knowledge in determining if a person has been adjudicated as a mental defective or committed to a mental institution, an individual could have been granted a permit thus increasing the likelihood of a prohibited individual obtaining a firearm.

- **Federal Denial Criteria - Illegal/Unlawful Alien: Ensure individuals are denied who are aliens illegally or unlawfully in the U.S. in accordance with Title 18, U.S.C., § 922 (g) (5).**

The Barbour, Blount, Bullock, Cherokee, Chilton, Clarke, Clay, Covington, Dallas, Elmore, Fayette, Geneva, Lamar, Macon, Marengo, Morgan, Perry, Randolph, Sumter, and Winston County Sheriffs' Offices application for a permit to carry pistol in vehicle or concealed on person failed to capture additional immigration-related information, including the applicant's country of citizenship, whether the person is a non-immigrant alien, and, in the case of individuals who are not U.S. Citizens, the person's U.S.-Issued Alien, or Admission number (AR#, USCIS#, or I94#). Failing to obtain this information precluded all the agencies from initiating the required IAQ with the U.S. Immigration and Customs Enforcement for all aliens to inquire about the persons' immigration status and whether the person is illegally or unlawfully in the U.S.

- **Federal Denial Criteria - Dishonorable Discharge: Ensure individuals are denied when discharged from the U.S. Armed Forces under dishonorable conditions as per Title 18, U.S.C., § 922 (g) (6).**

The Elmore County Sheriff's Office was not aware that a dishonorable discharge from the U.S. Armed Forces constituted a denial. The agency was also unaware of what a NICS Index hit meant or using it to deny. The Barbour, Covington, Geneva, Marengo, and Sumter County Sheriffs' Offices were unaware of any of the federal denial criteria

5

ATF000697

Ms. Marianna Mitchem

requirements to deny a permit. Due to each agency's lack of knowledge of determining if a person has been dishonorably discharged, an individual could have been granted a permit thus increasing the likelihood of a prohibited individual obtaining a firearm.

- **Federal Denial Criteria - Citizenship Renunciation: Ensure individuals are denied who have renounced their U.S. citizenship per Title 18, U.S.C., § 922 (g) (7).**

The Barbour, Covington, Geneva, Marengo, and Sumter County Sheriffs' Offices were unaware of any of the federal denial criteria requirements to deny a permit. Due to each agency's lack of knowledge of determining if a person has renounced their U.S. citizenship, an individual could have been granted a permit thus increasing the likelihood of a prohibited individual obtaining a firearm.

- **Federal Denial Criteria - Protective Order: Ensure only those individuals who are subject to a court order of protection meeting the federal definition are denied per Title 18, U.S.C., § 922 (g) (8).**

The Elmore County Sheriff's Office was unaware of determining the relationship criteria to deny an individual who has an active protection order.

The Barbour, Covington, Geneva, Marengo, and Sumter County Sheriffs' Offices were unaware of any of the federal denial criteria requirements to deny a permit. Due to each agency's lack of knowledge of a person being subject to a disqualifying protection order, an individual could have been granted a permit thus increasing the likelihood of a prohibited individual obtaining a firearm.

- **Federal Denial Criteria - Misdemeanor Crime of Domestic Violence: Ensure individuals are denied who have been convicted in any court of a misdemeanor crime of domestic violence per Title 18, U.S.C., § 922 (g) (9).**

Bullock County Sheriff's Office was unaware that a Misdemeanor Crime of Domestic Violence was a lifetime prohibition. The Chilton and Macon County Sheriffs' Offices were denying on all charges the agencies deemed to be domestic violence regardless of the elements contained in the convicting statute or the relationship criteria. The Elmore County Sheriff's Office was unaware of determining the relationship criteria.

The Barbour, Covington, Marengo, and Sumter County Sheriffs' Offices were unaware of any of the federal denial criteria requirements to deny a permit. Due to each agency's lack

6

Ms. Marianna Mitchem

of knowledge on persons convicted in any court of a misdemeanor crime of domestic violence, an individual could have been granted a permit thus increasing the likelihood of a prohibited individual obtaining a firearm.

- **Alternate Permit Requirements - Alternate Permit NICS Check and Renewal Process: Ensure a NICS check is conducted prior to the issuance of a permit valid to purchase a firearm as required by federal law. (*This was a finding during the previous cycle.*)**

The exception to the required NICS background check as outlined in Title 27 C.F.R., Part 478.102 (d) (1) in part states that the provisions of paragraph (a) shall not apply if - the transferee has presented to the licensee a valid permit or license that allows the transferee to possess, acquire, or carry a firearm; was issued not more than five years earlier by the state in which the transfer is to take place; and the law of the state provides that such a permit or license is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by the transferee would be in violation of federal, state, or local law. All 24 counties selected for audit were not conducting the required NICS background check beginning August 1, 2013, prior to issuing a permit valid to purchase a firearm as required by federal law stated in part above.

As an Alternate Permit state, each county must run the required checks on all active permits issued since August 1, 2013. The totals for the agencies audited are listed in the attached chart. As of the date of this report, several counties failed to respond to the CAU requests for final totals of checks conducted and several counties were still in the process of obtaining counts due to lack of staff, poor record keeping practices, or issues with prior county administrations. In addition, all counties to include those not audited must run the required checks on all active permits issued since August 1, 2013, and adjudicate the results for any potential disqualifying information under federal, state, or local law. Furthermore, a majority of the agencies audited were not aware that once a permit expired another NICS check had to be conducted to issue the new permit.

The 20 counties responsive to the audit have since began conducting the required NICS checks on all permits that are active since August 1, 2013, for an approximate total of over 41,250 NICS checks. These counties, as well as those not audited, have been at risk for allowing a person who is not authorized under federal law to purchase a firearm unchallenged. The CAU staff has confirmed that no less than 52 permits have been revoked thus far due to not conducting the necessary NICS check when the permit was originally issued. Reasons for revoking the permit spanned almost all federal prohibitors to include, adjudicated as a mental defective, misdemeanor crime of domestic violence convictions,

7

Ms. Marianna Mitchem

active Brady protection order, under indictment for a felony, and numerous felony convictions including one for arson.

It is noted that as of July 22, 2019, the ATF issued a Public Safety Advisory Letter for FFLs states effective immediately to no longer accept CCP permits as an alternative to the NICS check.

Thank you for your cooperation throughout the audit process. If you should have any questions, please contact Ms. Beth A. Dean at ▮▮▮▮▮▮ or ▮▮▮▮▮▮ .

Sincerely yours,

William G. McKinsey
Section Chief
Resources Management Section
Criminal Justice Information
    Services Division

By:
Michael D. McIntyre Jr.
Unit Chief

Attachment

8

## BRADY HANDGUN VIOLENCE PREVENTION ACT

*P.L. 103–159, see page 107 Stat. 1536*

### DATES OF CONSIDERATION AND PASSAGE

*House: November 10, 22, 1993*
*Senate: November 19, 20, 24, 1993*

Cong. Record Vol. 139 (1993)

House Report (Judiciary Committee) No. 103–344, Nov. 10, 1993
[To accompany H.R. 1025]

House Conference Report No. 103–412, November 22, 1993
[To accompany H.R. 1025]

*No Senate Report was submitted with this legislation. The House Report (this page) is set out below and the House Conference Report (page 2011) follows.*

## HOUSE REPORT NO. 103–344

[page 1]

The Committee on the Judiciary, to whom was referred the bill (H.R. 1025) to provide for a waiting period before the purchase of a handgun, and for the establishment of a national instant criminal background check system to be contacted by firearms dealers before the transfer of any firearm, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass.

\* \* \* \* \* \* \*

[page 7]

### EXPLANATION OF AMENDMENT

Inasmuch as H.R. 1025 was ordered reported with a single amendment in the nature of a substitute, the contents of this report constitute an explanation of that amendment.

### SUMMARY AND PURPOSE

The purpose of H.R. 1025 is to prevent convicted felons and other persons who are barred by law from purchasing guns from licensed gun dealers, manufacturers or importers. The bill would establish a national, five-working-day waiting period for the purchase of a handgun. Local law enforcement officials are required to use the waiting period to determine whether a prospective handgun purchaser has a felony conviction or is otherwise prohibited by law from buying a gun. States with their own programs for conducting background checks of handgun purchasers would be exempt from the waiting period, provided they are in compliance with criminal record computerization timetables to be established by the Attorney General. The bill also exempts from the waiting period any individual who obtains from the chief law enforcement officer in his

1984

ATF000701

## BRADY HANDGUN CONTROL ACT
P.L. 103–159

[page 8]

or her area a statement that the individual needs a firearm to protect someone in his or her family from imminent harm.

H.R. 1025 directs the Attorney General to develop a national instant criminal background check system capable of instant response to inquiries and use by licensed gun dealers, manufacturers, or importers at the point of firearm purchase. This system is intended to enable those licensees to confirm the lawfulness of a sale without a waiting period. As soon as this system is operational, the waiting period provisions of H.R. 1025 will cease to be in effect. Instead, dealers will be required to consult the national instant criminal background check system before transferring a firearm.

### BACKGROUND

*The prevalence of gun violence*

The United States is beset by an epidemic of gun violence, as evidenced by the following data:

15,377 Americans were murdered with firearms in 1992. 12,489 of these murders were committed with handguns.[1]

Gun murders in the United States increased by 41 percent between 1988 and 1992.[2]

530,000 Americans were robbed or assaulted by firearm-wielding criminals in 1991.[3]

Armed rapists attacked nearly 15,000 women in the United States last year.[4]

Two University of California economists have estimated the direct medical cost of firearms injuries at $1.4 billion annually, and the indirect cost of lost productivity at $19 billion annually.[5]

The level of firearm violence in this country is, by far, the highest among developed nations. By contrast, in 1990 handguns killed a total (including murders, suicides, and accidents) of 22 people in Great Britain, 87 in Japan, and 68 in Canada.[6] The comparable United States figure is more than 24,000.[7]

The magnitude of these statistics can numb observers to the enormous tragedy of each individual handgun crime. On March 30, 1981, however, the attempted assassination of President Reagan shocked the American public. In a few seconds, and at close range, John Hinckley, Jr., shot President Reagan in the chest with a .22 caliber pistol, shot White House Press Secretary James Brady in the head, and shot a Secret Service agent and a District of Columbia Police Officer.[8]

---

[1] U.S. Department of Justice, Federal Bureau of Investigation, "Uniform Crime Reports for the United States 1992" at 18.

[2] Id.

[3] U.S. Department of Justice, Bureau of Justice Statistics, "Sourcebook of Criminal Justice Statistics 1992" at 371.

[4] Id. at 292.

[5] Wendy Max & Dorothy Rice, "Shooting in the Dark: Estimating the Cost of Firearm Injuries", in Health Affairs (Winter 1992).

[6] These figures were obtained by staff of the Judiciary Committee's Subcommittee on Crime and Criminal Justice in phone conversations with the appropriate consular offices (1992).

[7] U.S. Department of Justice, Federal Bureau of Investigation, "Uniform Crime Reports—1990".

[8] See "Waiting Period Before the Sale, Delivery, or Transfer of a Handgun," Hearings Before the Subcommittee on Crime of the Committee on the Judiciary, House of Representatives, 100th Cong., 1st and 2d sess. (November 30, 1987 and February 24, 1988) (statement of Jim Brady).

1985

ATF000702

107 STAT. 1536          PUBLIC LAW 103–159—NOV. 30, 1993

Public Law 103–159
103d Congress

## An Act

Nov. 30, 1993
[H.R. 1025]

To provide for a waiting period before the purchase of a handgun, and for the establishment of a national instant criminal background check system to be contacted by firearms dealers before the transfer of any firearm.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

Brady Handgun
Violence
Prevention
Act.
Inter-
governmental
relations.
Law
enforcement
and crime.
18 USC 921 note.

# TITLE I—BRADY HANDGUN CONTROL

**SEC. 101. SHORT TITLE.**

This title may be cited as the "Brady Handgun Violence Prevention Act".

**SEC. 102. FEDERAL FIREARMS LICENSEE REQUIRED TO CONDUCT CRIMINAL BACKGROUND CHECK BEFORE TRANSFER OF FIREARM TO NON-LICENSEE.**

Effective date.
Termination
date.

(a) INTERIM PROVISION.—

(1) IN GENERAL.—Section 922 of title 18, United States Code, is amended by adding at the end the following:

"(s)(1) Beginning on the date that is 90 days after the date of enactment of this subsection and ending on the day before the date that is 60 months after such date of enactment, it shall be unlawful for any licensed importer, licensed manufacturer, or licensed dealer to sell, deliver, or transfer a handgun to an individual who is not licensed under section 923, unless—

"(A) after the most recent proposal of such transfer by the transferee—

"(i) the transferor has—

"(I) received from the transferee a statement of the transferee containing the information described in paragraph (3);

"(II) verified the identity of the transferee by examining the identification document presented;

"(III) within 1 day after the transferee furnishes the statement, provided notice of the contents of the statement to the chief law enforcement officer of the place of residence of the transferee; and

"(IV) within 1 day after the transferee furnishes the statement, transmitted a copy of the statement

ATF000730

to the chief law enforcement officer of the place of residence of the transferee; and

"(ii)(I) 5 business days (meaning days on which State offices are open) have elapsed from the date the transferor furnished notice of the contents of the statement to the chief law enforcement officer, during which period the transferor has not received information from the chief law enforcement officer that receipt or possession of the handgun by the transferee would be in violation of Federal, State, or local law; or

"(II) the transferor has received notice from the chief law enforcement officer that the officer has no information indicating that receipt or possession of the handgun by the transferee would violate Federal, State, or local law;

"(B) the transferee has presented to the transferor a written statement, issued by the chief law enforcement officer of the place of residence of the transferee during the 10-day period ending on the date of the most recent proposal of such transfer by the transferee, stating that the transferee requires access to a handgun because of a threat to the life of the transferee or of any member of the household of the transferee;

"(C)(i) the transferee has presented to the transferor a permit that—

"(I) allows the transferee to possess or acquire a handgun; and

"(II) was issued not more than 5 years earlier by the State in which the transfer is to take place; and

"(ii) the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a handgun by the transferee would be in violation of the law;

"(D) the law of the State requires that, before any licensed importer, licensed manufacturer, or licensed dealer completes the transfer of a handgun to an individual who is not licensed under section 923, an authorized government official verify that the information available to such official does not indicate that possession of a handgun by the transferee would be in violation of law;

"(E) the Secretary has approved the transfer under section 5812 of the Internal Revenue Code of 1986; or

"(F) on application of the transferor, the Secretary has certified that compliance with subparagraph (A)(i)(III) is impracticable because—

"(i) the ratio of the number of law enforcement officers of the State in which the transfer is to occur to the number of square miles of land area of the State does not exceed 0.0025;

"(ii) the business premises of the transferor at which the transfer is to occur are extremely remote in relation to the chief law enforcement officer; and

"(iii) there is an absence of telecommunications facilities in the geographical area in which the business premises are located.

"(2) A chief law enforcement officer to whom a transferor has provided notice pursuant to paragraph (1)(A)(i)(III) shall make a reasonable effort to ascertain within 5 business days whether

ATF000731

receipt or possession would be in violation of the law, including research in whatever State and local recordkeeping systems are available and in a national system designated by the Attorney General.

"(3) The statement referred to in paragraph (1)(A)(i)(I) shall contain only—

"(A) the name, address, and date of birth appearing on a valid identification document (as defined in section 1028(d)(1)) of the transferee containing a photograph of the transferee and a description of the identification used;

"(B) a statement that the transferee—

"(i) is not under indictment for, and has not been convicted in any court of, a crime punishable by imprisonment for a term exceeding 1 year;

"(ii) is not a fugitive from justice;

"(iii) is not an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act);

"(iv) has not been adjudicated as a mental defective or been committed to a mental institution;

"(v) is not an alien who is illegally or unlawfully in the United States;

"(vi) has not been discharged from the Armed Forces under dishonorable conditions; and

"(vii) is not a person who, having been a citizen of the United States, has renounced such citizenship;

"(C) the date the statement is made; and

"(D) notice that the transferee intends to obtain a handgun from the transferor.

"(4) Any transferor of a handgun who, after such transfer, receives a report from a chief law enforcement officer containing information that receipt or possession of the handgun by the transferee violates Federal, State, or local law shall, within 1 business day after receipt of such request, communicate any information related to the transfer that the transferor has about the transfer and the transferee to—

"(A) the chief law enforcement officer of the place of business of the transferor; and

"(B) the chief law enforcement officer of the place of residence of the transferee.

"(5) Any transferor who receives information, not otherwise available to the public, in a report under this subsection shall not disclose such information except to the transferee, to law enforcement authorities, or pursuant to the direction of a court of law.

"(6)(A) Any transferor who sells, delivers, or otherwise transfers a handgun to a transferee shall retain the copy of the statement of the transferee with respect to the handgun transaction, and shall retain evidence that the transferor has complied with subclauses (III) and (IV) of paragraph (1)(A)(i) with respect to the statement.

"(B) Unless the chief law enforcement officer to whom a statement is transmitted under paragraph (1)(A)(i)(IV) determines that a transaction would violate Federal, State, or local law—

"(i) the officer shall, within 20 business days after the date the transferee made the statement on the basis of which the notice was provided, destroy the statement, any record

Records.

ATF000732

containing information derived from the statement, and any record created as a result of the notice required by paragraph (1)(A)(i)(III);

"(ii) the information contained in the statement shall not be conveyed to any person except a person who has a need to know in order to carry out this subsection; and

"(iii) the information contained in the statement shall not be used for any purpose other than to carry out this subsection.

"(C) If a chief law enforcement officer determines that an individual is ineligible to receive a handgun and the individual requests the officer to provide the reason for such determination, the officer shall provide such reasons to the individual in writing within 20 business days after receipt of the request.

"(7) A chief law enforcement officer or other person responsible for providing criminal history background information pursuant to this subsection shall not be liable in an action at law for damages—

"(A) for failure to prevent the sale or transfer of a handgun to a person whose receipt or possession of the handgun is unlawful under this section; or

"(B) for preventing such a sale or transfer to a person who may lawfully receive or possess a handgun.

"(8) For purposes of this subsection, the term 'chief law enforcement officer' means the chief of police, the sheriff, or an equivalent officer or the designee of any such individual.

"(9) The Secretary shall take necessary actions to ensure that the provisions of this subsection are published and disseminated to licensed dealers, law enforcement officials, and the public.". Publication. Public information.

(2) HANDGUN DEFINED.—Section 921(a) of title 18, United States Code, is amended by adding at the end the following:

"(29) The term 'handgun' means—

"(A) a firearm which has a short stock and is designed to be held and fired by the use of a single hand; and

"(B) any combination of parts from which a firearm described in subparagraph (A) can be assembled.".

(b) PERMANENT PROVISION.—Section 922 of title 18, United States Code, as amended by subsection (a)(1), is amended by adding at the end the following:

"(t)(1) Beginning on the date that is 30 days after the Attorney General notifies licensees under section 103(d) of the Brady Handgun Violence Prevention Act that the national instant criminal background check system is established, a licensed importer, licensed manufacturer, or licensed dealer shall not transfer a firearm to any other person who is not licensed under this chapter, unless— Effective date.

"(A) before the completion of the transfer, the licensee contacts the national instant criminal background check system established under section 103 of that Act;

"(B)(i) the system provides the licensee with a unique identification number; or

"(ii) 3 business days (meaning a day on which State offices are open) have elapsed since the licensee contacted the system, and the system has not notified the licensee that the receipt of a firearm by such other person would violate subsection (g) or (n) of this section; and

"(C) the transferor has verified the identity of the transferee by examining a valid identification document (as defined in

ATF000733

section 1028(d)(1) of this title) of the transferee containing a photograph of the transferee.

"(2) If receipt of a firearm would not violate section 922 (g) or (n) or State law, the system shall—

"(A) assign a unique identification number to the transfer;

"(B) provide the licensee with the number; and

Records.

"(C) destroy all records of the system with respect to the call (other than the identifying number and the date the number was assigned) and all records of the system relating to the person or the transfer.

"(3) Paragraph (1) shall not apply to a firearm transfer between a licensee and another person if—

"(A)(i) such other person has presented to the licensee a permit that—

"(I) allows such other person to possess or acquire a firearm; and

"(II) was issued not more than 5 years earlier by the State in which the transfer is to take place; and

"(ii) the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law;

"(B) the Secretary has approved the transfer under section 5812 of the Internal Revenue Code of 1986; or

"(C) on application of the transferor, the Secretary has certified that compliance with paragraph (1)(A) is impracticable because—

"(i) the ratio of the number of law enforcement officers of the State in which the transfer is to occur to the number of square miles of land area of the State does not exceed 0.0025;

"(ii) the business premises of the licensee at which the transfer is to occur are extremely remote in relation to the chief law enforcement officer (as defined in subsection (s)(8)); and

"(iii) there is an absence of telecommunications facilities in the geographical area in which the business premises are located.

"(4) If the national instant criminal background check system notifies the licensee that the information available to the system does not demonstrate that the receipt of a firearm by such other person would violate subsection (g) or (n) or State law, and the licensee transfers a firearm to such other person, the licensee shall include in the record of the transfer the unique identification number provided by the system with respect to the transfer.

"(5) If the licensee knowingly transfers a firearm to such other person and knowingly fails to comply with paragraph (1) of this subsection with respect to the transfer and, at the time such other person most recently proposed the transfer, the national instant criminal background check system was operating and information was available to the system demonstrating that receipt of a firearm by such other person would violate subsection (g) or (n) of this section or State law, the Secretary may, after notice and opportunity for a hearing, suspend for not more than 6 months or revoke any license issued to the licensee under section 923, and may impose on the licensee a civil fine of not more than $5,000.

ATF000734

PUBLIC LAW 103–159—NOV. 30, 1993        107 STAT. 1541

"(6) Neither a local government nor an employee of the Federal Government or of any State or local government, responsible for providing information to the national instant criminal background check system shall be liable in an action at law for damages—

"(A) for failure to prevent the sale or transfer of a firearm to a person whose receipt or possession of the firearm is unlawful under this section; or

"(B) for preventing such a sale or transfer to a person who may lawfully receive or possess a firearm.".

(c) PENALTY.—Section 924(a) of title 18, United States Code, is amended—

(1) in paragraph (1), by striking "paragraph (2) or (3) of"; and

(2) by adding at the end the following:

"(5) Whoever knowingly violates subsection (s) or (t) of section 922 shall be fined not more than $1,000, imprisoned for not more than 1 year, or both.".

### SEC. 103. NATIONAL INSTANT CRIMINAL BACKGROUND CHECK SYSTEM.

Computers.
Records.
Tele-
communications.
18 USC 922 note.

(a) DETERMINATION OF TIMETABLES.—Not later than 6 months after the date of enactment of this Act, the Attorney General shall—

(1) determine the type of computer hardware and software that will be used to operate the national instant criminal background check system and the means by which State criminal records systems and the telephone or electronic device of licensees will communicate with the national system;

(2) investigate the criminal records system of each State and determine for each State a timetable by which the State should be able to provide criminal records on an on-line capacity basis to the national system; and

(3) notify each State of the determinations made pursuant to paragraphs (1) and (2).

(b) ESTABLISHMENT OF SYSTEM.—Not later than 60 months after the date of the enactment of this Act, the Attorney General shall establish a national instant criminal background check system that any licensee may contact, by telephone or by other electronic means in addition to the telephone, for information, to be supplied immediately, on whether receipt of a firearm by a prospective transferee would violate section 922 of title 18, United States Code, or State law.

(c) EXPEDITED ACTION BY THE ATTORNEY GENERAL.—The Attorney General shall expedite—

(1) the upgrading and indexing of State criminal history records in the Federal criminal records system maintained by the Federal Bureau of Investigation;

(2) the development of hardware and software systems to link State criminal history check systems into the national instant criminal background check system established by the Attorney General pursuant to this section; and

(3) the current revitalization initiatives by the Federal Bureau of Investigation for technologically advanced fingerprint and criminal records identification.

(d) NOTIFICATION OF LICENSEES.—On establishment of the system under this section, the Attorney General shall notify each licensee and the chief law enforcement officer of each State of

ATF000735

the existence and purpose of the system and the means to be used to contact the system.

(e) ADMINISTRATIVE PROVISIONS.—

(1) AUTHORITY TO OBTAIN OFFICIAL INFORMATION.—Notwithstanding any other law, the Attorney General may secure directly from any department or agency of the United States such information on persons for whom receipt of a firearm would violate subsection (g) or (n) of section 922 of title 18, United States Code or State law, as is necessary to enable the system to operate in accordance with this section. On request of the Attorney General, the head of such department or agency shall furnish such information to the system.

(2) OTHER AUTHORITY.—The Attorney General shall develop such computer software, design and obtain such telecommunications and computer hardware, and employ such personnel, as are necessary to establish and operate the system in accordance with this section.

(f) WRITTEN REASONS PROVIDED ON REQUEST.—If the national instant criminal background check system determines that an individual is ineligible to receive a firearm and the individual requests the system to provide the reasons for the determination, the system shall provide such reasons to the individual, in writing, within 5 business days after the date of the request.

(g) CORRECTION OF ERRONEOUS SYSTEM INFORMATION.—If the system established under this section informs an individual contacting the system that receipt of a firearm by a prospective transferee would violate subsection (g) or (n) of section 922 of title 18, United States Code or State law, the prospective transferee may request the Attorney General to provide the prospective transferee with the reasons therefor. Upon receipt of such a request, the Attorney General shall immediately comply with the request. The prospective transferee may submit to the Attorney General information to correct, clarify, or supplement records of the system with respect to the prospective transferee. After receipt of such information, the Attorney General shall immediately consider the information, investigate the matter further, and correct all erroneous Federal records relating to the prospective transferee and give notice of the error to any Federal department or agency or any State that was the source of such erroneous records.

Confidential information.

(h) REGULATIONS.—After 90 days' notice to the public and an opportunity for hearing by interested parties, the Attorney General shall prescribe regulations to ensure the privacy and security of the information of the system established under this section.

(i) PROHIBITION RELATING TO ESTABLISHMENT OF REGISTRATION SYSTEMS WITH RESPECT TO FIREARMS.—No department, agency, officer, or employee of the United States may—

(1) require that any record or portion thereof generated by the system established under this section be recorded at or transferred to a facility owned, managed, or controlled by the United States or any State or political subdivision thereof; or

(2) use the system established under this section to establish any system for the registration of firearms, firearm owners, or firearm transactions or dispositions, except with respect to persons, prohibited by section 922 (g) or (n) of title 18, United States Code or State law, from receiving a firearm.

(j) DEFINITIONS.—As used in this section:

ATF000736

(1) LICENSEE.—The term "licensee" means a licensed importer (as defined in section 921(a)(9) of title 18, United States Code), a licensed manufacturer (as defined in section 921(a)(10) of that title), or a licensed dealer (as defined in section 921(a)(11) of that title).

(2) OTHER TERMS.—The terms "firearm", "handgun", "licensed importer", "licensed manufacturer", and "licensed dealer" have the meanings stated in section 921(a) of title 18, United States Code, as amended by subsection (a)(2).

(k) AUTHORIZATION OF APPROPRIATIONS.—There are authorized to be appropriated, which may be appropriated from the Violent Crime Reduction Trust Fund established by section 1115 of title 31, United States Code, such sums as are necessary to enable the Attorney General to carry out this section.

### SEC. 104. REMEDY FOR ERRONEOUS DENIAL OF FIREARM.

(a) IN GENERAL.—Chapter 44 of title 18, United States Code, is amended by inserting after section 925 the following new section:

### "§ 925A. Remedy for erroneous denial of firearm

"Any person denied a firearm pursuant to subsection (s) or (t) of section 922—

"(1) due to the provision of erroneous information relating to the person by any State or political subdivision thereof, or by the national instant criminal background check system established under section 103 of the Brady Handgun Violence Prevention Act; or

"(2) who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922,

may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be. In any action under this section, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs.".

(b) TECHNICAL AMENDMENT.—The chapter analysis for chapter 44 of title 18, United States Code, is amended by inserting after the item relating to section 925 the following new item:

"925A. Remedy for erroneous denial of firearm.".

### SEC. 105. RULE OF CONSTRUCTION.

18 USC 921 note.

This Act and the amendments made by this Act shall not be construed to alter or impair any right or remedy under section 552a of title 5, United States Code.

### SEC. 106. FUNDING FOR IMPROVEMENT OF CRIMINAL RECORDS.

(a) USE OF FORMULA GRANTS.—Section 509(b) of title I of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3759(b)) is amended—

(1) in paragraph (2) by striking "and" after the semicolon;

(2) in paragraph (3) by striking the period and inserting "; and"; and

(3) by adding at the end the following new paragraph:

"(4) the improvement of State record systems and the sharing with the Attorney General of all of the records described in paragraphs (1), (2), and (3) of this subsection and the records

107 STAT. 1544          PUBLIC LAW 103–159—NOV. 30, 1993

18 USC 922 note.

required by the Attorney General under section 103 of the Brady Handgun Violence Prevention Act, for the purpose of implementing that Act.".

(b) ADDITIONAL FUNDING.—

(1) GRANTS FOR THE IMPROVEMENT OF CRIMINAL RECORDS.—The Attorney General, through the Bureau of Justice Statistics, shall, subject to appropriations and with preference to States that as of the date of enactment of this Act have the lowest percent currency of case dispositions in computerized criminal history files, make a grant to each State to be used—

(A) for the creation of a computerized criminal history record system or improvement of an existing system;

(B) to improve accessibility to the national instant criminal background system; and

(C) upon establishment of the national system, to assist the State in the transmittal of criminal records to the national system.

(2) AUTHORIZATION OF APPROPRIATIONS.—There are authorized to be appropriated for grants under paragraph (1), which may be appropriated from the Violent Crime Reduction Trust Fund established by section 1115 of title 31, United States Code, a total of $200,000,000 for fiscal year 1994 and all fiscal years thereafter.

# TITLE II—MULTIPLE FIREARM PURCHASES TO STATE AND LOCAL POLICE

## SEC. 201. REPORTING REQUIREMENT.

Section 923(g)(3) of title 18, United States Code, is amended—

(1) in the second sentence by inserting after "thereon," the following: "and to the department of State police or State law enforcement agency of the State or local law enforcement agency of the local jurisdiction in which the sale or other disposition took place,";

(2) by inserting "(A)" after "(3)"; and

(3) by adding at the end thereof the following:

Records.

"(B) Except in the case of forms and contents thereof regarding a purchaser who is prohibited by subsection (g) or (n) of section 922 of this title from receipt of a firearm, the department of State police or State law enforcement agency or local law enforcement agency of the local jurisdiction shall not disclose any such form or the contents thereof to any person or entity, and shall destroy each such form and any record of the contents thereof no more than 20 days from

Certification.

the date such form is received. No later than the date that is 6 months after the effective date of this subparagraph, and at the end of each 6-month period thereafter, the department of State police or State law enforcement agency or local law enforcement agency of the local jurisdiction shall certify to the Attorney General of the United States that no disclosure contrary to this subparagraph has been made and that all forms and any record of the contents thereof have been destroyed as provided in this subparagraph.".

ATF000738

PUBLIC LAW 103-159—NOV. 30, 1993          107 STAT. 1545

## TITLE III—FEDERAL FIREARMS LICENSE REFORM

Federal
Firearms
License Reform
Act of 1993.

### SEC. 301. SHORT TITLE.

18 USC 921 note.

This title may be cited as the "Federal Firearms License Reform Act of 1993".

### SEC. 302. PREVENTION OF THEFT OF FIREARMS.

(a) COMMON CARRIERS.—Section 922(e) of title 18, United States Code, is amended by adding at the end the following: "No common or contract carrier shall require or cause any label, tag, or other written notice to be placed on the outside of any package, luggage, or other container that such package, luggage, or other container contains a firearm.".

(b) RECEIPT REQUIREMENT.—Section 922(f) of title 18, United States Code, is amended—

(1) by inserting "(1)" after "(f)"; and

(2) by adding at the end the following new paragraph:

"(2) It shall be unlawful for any common or contract carrier to deliver in interstate or foreign commerce any firearm without obtaining written acknowledgement of receipt from the recipient of the package or other container in which there is a firearm.".

(c) UNLAWFUL ACTS.—Section 922 of title 18, United States Code, as amended by section 102, is amended by adding at the end the following new subsection:

"(u) It shall be unlawful for a person to steal or unlawfully take or carry away from the person or the premises of a person who is licensed to engage in the business of importing, manufacturing, or dealing in firearms, any firearm in the licensee's business inventory that has been shipped or transported in interstate or foreign commerce.".

(d) PENALTIES.—Section 924 of title 18, United States Code, is amended by adding at the end the following new subsection:

"(i)(1) A person who knowingly violates section 922(u) shall be fined not more than $10,000, imprisoned not more than 10 years, or both.

"(2) Nothing contained in this subsection shall be construed as indicating an intent on the part of Congress to occupy the field in which provisions of this subsection operate to the exclusion of State laws on the same subject matter, nor shall any provision of this subsection be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this subsection.".

### SEC. 303. LICENSE APPLICATION FEES FOR DEALERS IN FIREARMS.

Section 923(a)(3) of title 18, United States Code, is amended—

(1) in subparagraph (A), by adding "or" at the end;

(2) in subparagraph (B) by striking "a pawnbroker dealing in firearms other than" and inserting "not a dealer in";

ATF000739

(3) in subparagraph (B) by striking "$25 per year; or" and inserting "$200 for 3 years, except that the fee for renewal of a valid license shall be $90 for 3 years."; and
(4) by striking subparagraph (C).

Approved November 30, 1993.

LEGISLATIVE HISTORY—H.R. 1025 (S. 414):

HOUSE REPORTS: Nos. 103–344 (Comm. on the Judiciary) and 103–412
(Comm. of Conference).
CONGRESSIONAL RECORD, Vol. 139 (1993):
Nov. 10, considered and passed House.
Nov. 19, 20, considered and passed Senate, amended, in lieu of S. 414.
Nov. 23, House agreed to conference report.
Nov. 24, Senate agreed to conference report.
WEEKLY COMPILATION OF PRESIDENTIAL DOCUMENTS, Vol. 29 (1993):
Nov. 30, Presidential remarks.

ATF000740

Federal Register / Vol. 63, No. 33 / Thursday, February 19, 1998 / Proposed Rules          8379

in disaster surveys, documentation, and processing would be reduced.

The disadvantages are:

(1) States with larger highway programs could lose some ER funding as the higher disaster eligibility threshold in these States might eliminate some disasters which would have qualified for funding under the current threshold; and

(2) The FHWA would be required to track States with different disaster eligibility thresholds, resulting in more review time and paperwork.

Commenters are invited to present their views on the options discussed above. In addition, the FHWA welcomes other suggestions concerning the current dollar threshold and appropriate methods to update this threshold.

### Rulemaking Analyses and Notices

### Executive Order 12866 (Regulatory Planning and Review) and DOT Regulatory Policies and Procedures

The FHWA has determined preliminarily that any action taken regarding the disaster eligibility threshold will not be a significant regulatory action within the meaning of Executive Order 12866 or significant within the meaning of the Department of Transportation's regulatory policies and procedures. It is anticipated that the economic impact of any action taken in this rulemaking will be minimal. Any changes are not anticipated to adversely affect, in a material way, any sector of the economy. In addition, any changes are not likely to interfere with any action taken or planned by another agency or materially alter the budgetary impact of any entitlement, grants, user fees, or loan programs.

The FHWA emphasizes, however, that this document is published to generate discussion and comments which may be used in formulating specific proposals for the revision of a section of the current regulation dealing with disaster eligibility determinations for ER funding. It is not anticipated that these changes will affect the total Federal funding available under the ER program. Consequently, a full regulatory evaluation is not required. In any event, we strongly encourage and will actively consider comments on this matter, as well as other issues relating to the projected impact of actions contemplated in this ANPRM.

### Regulatory Flexibility Act

In compliance with the Regulatory Flexibility Act (5 U.S.C. 601–612), the FHWA will evaluate the effects of any action proposed on small entities. This ANPRM will only generate comments

and discussions on one of the disaster eligibility criteria used for providing emergency relief assistance to States in accordance with the existing laws, regulations and guidance. Thus, it would be premature to assess the economic impact of any action that might be contemplated. Because the States are not included in the definition of "small entity" set forth in 5 U.S.C. 601, we do not anticipate that any adjustment to the disaster eligibility threshold that might be considered would have a substantial economic impact on small entities within the meaning of the Regulatory Flexibility Act. We encourage commenters to evaluate any options addressed here with regard to their potential for impact, however, and to formulate their comments accordingly.

### Executive Order 12612 (Federalism Assessment)

Any action that might be proposed in subsequent stages of this proceeding will be analyzed in accordance with the principles and criteria contained in Executive Order 12612. Given the nature of the issues involved in this proceeding, the FHWA anticipates that any action contemplated will not have sufficient federalism implications to warrant the preparation of a federalism assessment. Nor does the FHWA anticipate that any action taken would preempt any State law or State regulation or affect the States' ability to discharge traditional State governmental functions. We encourage commenters to consider these issues, however, as well as matters concerning any costs or burdens that might be imposed on the States as a result of actions considered here.

### Executive Order 12372 (Intergovernmental Review)

Catalog of Federal Domestic Assistance Program Number 20.205, Highway Planning and Construction. The regulations implementing Executive Order 12372 regarding intergovernmental consultation on Federal programs and activities apply to this program.

### Paperwork Reduction Act

Any action that might be contemplated in subsequent phases of this proceeding is not likely to involve a collection of information requirement for the purposes of the Paperwork Reduction Act of 1995, 44 U.S.C. 3501–3500, or information collection requirements not already approved for the ER program. The FHWA, however, will evaluate any actions that might be

considered in accordance with the terms of the Paperwork Reduction Act.

### National Environmental Policy Act

The agency also will analyze any action that might be proposed for the purpose of the National Environmental Policy Act of 1969 (42 U.S.C. 4321–4347) to assess whether there would be any effect on the quality of the environment.

### Regulation Identification Number

A regulation identification number (RIN) is assigned to each regulatory action listed in the Unified Agenda of Federal Regulations. The Regulatory Information Service Center publishes the Unified Agenda in April and October of each year. The RIN number contained in the heading of this document can be used to cross reference this action with the Unified Agenda.

### List of Subjects In 23 CFR Part 668

Emergency relief program, Grant programs-transportation, Highways and roads.

Authority: 23 U.S.C. 315; 23 U.S.C. 101; 23 U.S.C. 120(e); 23 U.S.C. 125; 49 CFR 1.48(6).

Issued on: February 11, 1998.

Kenneth R. Wykle,

*Administrator, Federal Highway Administration.*

[FR Doc. 98–4172 Filed 2–18–98; 8:45 am]

BILLING CODE 4910-22-P

---

## DEPARTMENT OF THE TREASURY

### Bureau of Alcohol, Tobacco and Firearms

**27 CFR Parts 178 and 179**

[Notice No. 857]

RIN: 1512–AB67

**Implementation of Public Law 103–159, Relating to the Permanent Provisions of the Brady Handgun Violence Prevention Act (93F–057P)**

**AGENCY:** Bureau of Alcohol, Tobacco and Firearms (ATF), Department of the Treasury.

**ACTION:** Notice of proposed rulemaking.

**SUMMARY:** The Bureau of Alcohol, Tobacco and Firearms (ATF) is proposing to amend the regulations to implement the provisions of Public Law 103–159, relating to the permanent provisions of the Brady Handgun Violence Prevention Act. These proposed regulations implement the law by requiring, with some exceptions, a licensed firearms importer, manufacturer, or dealer to contact the

Federal Register / Vol. 63, No. 33 / Thursday, February 19, 1998 / Proposed Rules    **8381**

in addition to the unique identification number (if any) provided by the system, on the firearms transaction record (ATF Form 4473). The proposed regulations also require that licensees maintain a copy of each Form 4473 for which a NICS transaction number has been received, regardless of whether the transfer of the firearm was completed. This will enable ATF to determine compliance with the law by licensees and purchasers.

*Exceptions to NICS*

The statute provides the following exceptions to the national instant background check system:

1. The transferee presents to the licensee a permit which was issued not more than 5 years earlier by the State in which the transfer is to take place and which allows the transferee to possess or acquire a firearm, and the law of the State provides that such a permit is to be issued only after an authorized government official has verified that available information does not indicate that possession of a firearm by the transferee would be in violation of the law;

2. Purchases of firearms which are subject to the National Firearms Act and which have been approved for transfer under 27 CFR Part 179 (Machine Guns, Destructive Devices, and Certain Other Firearms); or

3. Purchases of firearms for which the Secretary has certified that compliance with NICS is impracticable because the ratio of the number of law enforcement officers of the State in which the transfer is to occur to the number of square miles of land area of the State does not exceed 0.0025 (i.e., 25 officers per 10,000 square miles), the premises of the licensee are remote in relation to the chief law enforcement officer of the area, and there is an absence of telecommunications facilities in the geographical area in which the business premises are located.

Proposed regulations which implement these provisions of the law are set forth in §§ 178.102(d), 178.131, and 178.150.

It should be noted that State "instant check" and "point of sale check" systems will not qualify as alternatives to the NICS check required by the permanent provisions of the Brady law. Therefore, NICS checks must be conducted on firearms purchasers in those States.

With respect to purchases of firearms which are subject to the National Firearms Act, ATF is proposing to amend § 179.86 to provide that in addition to any other records checks that may be conducted to determine

whether the transfer, receipt, or possession of a firearm would place the transferee in violation of law, the Director must contact NICS.

*Permits*

The Brady law provides that a licensee is not required to initiate a NICS check where the purchaser presents a permit that allows the purchaser to "possess or acquire a firearm." The proposed regulations clarify that this exception includes permits to carry concealed weapons as well as permits specifically authorizing the purchase of a firearm.

For purposes of the permanent provisions of the Brady law, it is irrelevant whether the permit covers the type of firearm that is being purchased. For example, a licensee need not initiate a NICS check where an individual who wishes to purchase a rifle presents a handgun permit, as long as that permit meets all the requirements of the Brady law. The critical issue is not the type of firearm for which the permit was issued, but whether the State has conducted a background check on that individual to ensure that the individual is not prohibited from possessing a firearm. Of course, all such transactions must still comply with State law.

*NICS Checks in Conjunction With the Issuance of Permits*

The law provides that the permit must have been issued not more than 5 years earlier by the State in which the transfer is to take place. Furthermore, the permit is a valid alternative under the Brady law only if the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law.

In construing the language of the statute, it is ATF's position that as of November 30, 1998, "the information available to" State officials will include the NICS database. Accordingly, the proposed regulations provide that permits issued on or after November 30, 1998, will be valid alternatives under the permanent provisions of the Brady law only if the State officials conduct a NICS check on all permit applicants. It should be noted that the NICS database will provide a more extensive background check of the purchaser than other record systems containing only criminal records. NICS will include records from the Defense Department concerning dishonorable discharges, records from the State Department regarding individuals who have

renounced United States citizenship, and other information not available in criminal records.

*Permits Issued to Persons Prohibited Under Federal Law*

The proposed regulations provide that a permit would be a valid alternative only if the issuing State verifies that possession of a firearm by the permittee would not be in violation of Federal, State, or local law. There may be States that would issue a permit to individuals (such as persons who have renounced United States citizenship or persons convicted of a misdemeanor crime of domestic violence) even though these individuals are subject to Federal firearms disabilities. If a State does not disqualify all individuals prohibited under Federal law, the permits issued by that State would not be accepted as alternatives under the permanent provisions of the Brady law. Prior to the effective date of the permanent provisions of the Brady law, ATF will notify licensees in each State whether or not permits issued by that State will suffice as alternatives under the Brady law.

*Pawn Transactions*

The permanent provisions of the Brady law apply to any transfer of a firearm by a licensed importer, manufacturer, or dealer to a nonlicensee. This includes the redemption of a pawned firearm. It should be noted that the Violent Crime Control and Law Enforcement Act of 1994, Public Law 103–322, amended § 922(s) of the GCA to exempt transactions involving the return of a handgun to the person from whom it was received. Thus, the redemption of a pawned handgun by the person from whom it was received is not subject to the waiting period and background check requirements imposed by the interim provisions of the Brady law. However, no such exemption appears in § 922(t). Thus, the proposed regulations would apply the permanent provisions of the Brady law to pawn transactions.

*Firearms Transaction Record (Form 4473)*

In general, the regulations provide that prior to the transfer of a firearm to a prospective purchaser, the buyer must complete, sign, and date a firearms transaction record, Form 4473. The form requests certain information, including the transferee's name, sex, height, weight, race, residence address, date of birth, and place of birth. ATF is proposing to amend the regulations to solicit additional optional information about the purchaser, such as the

ATF000742

**8382**    Federal Register / Vol. 63, No. 33 / Thursday, February 19, 1998 / Proposed Rules

transferee's social security number and alien registration number (if applicable), to facilitate the transfer of a firearm.

ATF believes this additional information will help minimize the misidentification of firearms purchasers as felons or other prohibited persons whose receipt and possession would violate the law. For example, by providing a social security number, the transferee might avoid confusion with a prohibited buyer who has the same name and date of birth as the transferee. This would clearly help expedite the transfer. ATF would note that ATF Form 5300.35, Statement of Intent to Obtain a Handgun (Brady form), currently requests the purchaser's social security number and alien registration number as optional information. Because the NICS check will be based upon information from the Form 4473, the proposed regulations would not require firearms purchasers to fill out a separate Brady form.

*Executive Order 12866*

It has been determined that this proposed regulation is not a significant regulatory action as defined by Executive Order 12866. Therefore, a Regulatory Assessment is not required.

*Regulatory Flexibility Act*

It is hereby certified that these proposed regulations will not have a significant economic impact on a substantial number of small entities. The revenue effects of this rulemaking on small businesses flow directly from the underlying statute. Likewise, any secondary or incidental effects, and any reporting, recordkeeping, or other compliance burdens flow directly from the statute. Accordingly, a regulatory flexibility analysis is not required.

*Paperwork Reduction Act*

The collections of information contained in this notice of proposed rulemaking have been submitted to the Office of Management and Budget (OMB) for review in accordance with the Paperwork Reduction Act of 1995 (44 U.S.C. 3507(d)). Comments on the collections of information should be sent to the Office of Management and Budget, Attention: Desk Officer for the Department of the Treasury/Bureau of Alcohol, Tobacco and Firearms (ATF), Office of Information and Regulatory Affairs, Washington, D.C., 20503, with copies to the Chief, Document Services Branch, Room 3450, Bureau of Alcohol, Tobacco and Firearms, 650 Massachusetts Avenue, NW., Washington, DC 20226. Comments are specifically requested concerning:

Whether the proposed collections of information are necessary for the proper performance of the functions of ATF, including whether the information will have practical utility;

The accuracy of the estimated burden associated with the proposed collections of information (see below);

How the quality, utility, and clarity of the information to be collected may be enhanced; and

How the burden of complying with the proposed collections of information may be minimized, including through the application of automated collection techniques or other forms of information technology.

The collections of information in this proposed regulation are in §§ 178.102, 178.124(c), 178.125(e), 178.129(b), 178.131, and 178.150. This information is required to implement the provisions of Public Law 103–159, relating to the permanent provisions of the Brady Handgun Violence Prevention Act. The collections of information are required to ensure compliance with the law. The likely respondents and/or recordkeepers are individuals and businesses.

*Estimated number of respondents:* 10,273,851.

*Estimated total annual reporting and/or recordkeeping burden:* 199,357 hours.

*Estimated average annual burden per respondent and/or recordkeeper:* 1.16 minutes.

Section 178.102 requires, with some exceptions, licensees to contact NICS before transferring any firearm to an unlicensed individual. The estimated total annual reporting and/or recordkeeping burden associated with this requirement is 112,978 hours. Section 178.124(c) requires licensees to record on Form 4473 the date the licensee contacts NICS and any identification number provided by NICS. The licensee must also verify the identity of the person acquiring the firearm by examining an identification document presented by the transferee. Form 4473 will include certain optional information about the purchaser, such as the person's social security number and alien registration number. The estimated total annual reporting and/or recordkeeping burden associated with this requirement is 53,549 hours. Section 178.125(e) requires licensees to include in their records of disposition the identification number provided by NICS. The estimated total annual reporting and/or recordkeeping burden associated with this requirement is 18,444 hours. Section 178.129(b) requires licensees to retain a completed Form 4473 for a period of not less than 5 years where the transfer of a firearm is not made. The estimated total annual

recordkeeping burden associated with this requirement is 553 hours. Section 178.131 requires licensees to maintain certain records for firearms transactions not subject to a NICS check. The estimated annual recordkeeping burden associated with this requirement is 13,833 hours. Section 178.150 provides for an alternative to NICS in certain geographical locations. Licensees must submit a written application to the Director containing certain information. The same requirement currently applies to the waiting period provision of the Brady law for transfers of handguns. Since this requirement was established in 1994, no licensee has qualified for an exception from the provisions of Brady based on geographical location. As such, ATF does not believe that there is any reporting and/or recordkeeping burden associated with the requirements of § 178.150 with regard to NICS.

Certain collections of information contained in § 178.129(b), previously approved under control numbers 1512–0520, 1512–0006, and 1512–0524, are merely being redesignated as § 178.129(c) in this notice of proposed rulemaking. Similarly, the collections of information in § 178.129(c), (d), and (e), previously approved under control numbers 1512–0129 and 1512–0526, are being redesignated as § 178.129(d), (e), and (f) in the proposed regulation.

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid control number assigned by the Office of Management and Budget.

*Public Participation*

ATF requests comments on the proposed regulations from all interested persons. Comments received on or before the closing date will be carefully considered. Comments received after that date will be given the same consideration if it is practical to do so, but assurance of consideration cannot be given except as to comments received on or before the closing date.

ATF will not recognize any material in comments as confidential. Comments may be disclosed to the public. Any material which the commenter considers to be confidential or inappropriate for disclosure to the public should not be included in the comment. The name of the person submitting a comment is not exempt from disclosure.

Any interested person who desires an opportunity to comment orally at a public hearing should submit his or her request, in writing, to the Director within the 90-day comment period. The Director, however, reserves the right to

ATF000743

Federal Register / Vol. 63, No. 33 / Thursday, February 19, 1998 / Proposed Rules    **8383**

determine, in light of all circumstances, whether a public hearing is necessary.

*Disclosure*

Copies of this notice and the written comments will be available for public inspection during normal business hours at: ATF Public Reading Room, Room 6480, 650 Massachusetts Avenue, NW., Washington, DC.

Drafting Information: The author of this document is James P. Ficaretta, Regulations Division, Bureau of Alcohol, Tobacco and Firearms.

**List of Subjects in 27 CFR Parts 178 and 179**

Administrative practice and procedure, Arms and munitions, Authority delegations, Customs duties and inspection, Exports, Imports, Military personnel, Penalties, Reporting and recordkeeping requirements, Research, Seizures and forfeitures, Transportation.

*Authority and Issuance*

Accordingly, 27 CFR Parts 178 and 179 are amended as follows:

**PART 178—COMMERCE IN FIREARMS AND AMMUNITION**

1. The authority citation for 27 CFR Part 178 continues to read as follows:

Authority: 5 U.S.C. 552(a); 18 U.S.C. 847, 921–930; 44 U.S.C. 3504(h).

2. Section 178.11 is amended by adding a definition for "NICS" to read as follows:

**§ 178.11    Meaning of terms.**

\*    \*    \*    \*    \*

*NICS.* The National Instant Criminal Background Check System established by the Attorney General pursuant to 18 U.S.C. 922(t).

\*    \*    \*    \*    \*

3. Section 178.96 is amended by revising the first sentence in paragraph (b), and by revising paragraph (c) to read as follows:

**§ 178.96    Out-of-State and mail order sales.**

\*    \*    \*    \*    \*

(b) A licensed importer, licensed manufacturer, or licensed dealer may sell a firearm that is not subject to the provisions of § 178.102(a) to a nonlicensee who does not appear in person at the licensee's business premises if the nonlicensee is a resident of the same State in which the licensee's business premises are located, and the nonlicensee furnishes to the licensee the firearms transaction record, Form 4473, required by § 178.124. \* \* \*

(c)(1) A licensed importer, licensed manufacturer, or licensed dealer may

sell or deliver a rifle or shotgun, and a licensed collector may sell or deliver a rifle or shotgun that is a curio or relic, to a nonlicensed resident of a State other than the State in which the licensee's place of business is located if—

(i) The purchaser meets with the licensee in person at the licensee's premises to accomplish the transfer, sale, and delivery of the rifle or shotgun;

(ii) The licensed importer, licensed manufacturer, or licensed dealer complies with the provisions of § 178.102;

(iii) The purchaser furnishes to the licensed importer, licensed manufacturer, or licensed dealer the firearms transaction record, Form 4473, required by § 178.124; and

(iv) The sale, delivery, and receipt of the rifle or shotgun fully comply with the legal conditions of sale in both such States.

(2) For purposes of paragraph (c) of this section, any licensed manufacturer, licensed importer, or licensed dealer is presumed, in the absence of evidence to the contrary, to have had actual knowledge of the State laws and published ordinances of both such States.

4. Section 178.97 is revised to read as follows:

**§ 178.97    Loan or rental of firearms.**

(a) A licensee may lend or rent a firearm to any person for temporary use off the premises of the licensee for lawful sporting purposes: *Provided,* That the delivery of the firearm to such person is not prohibited by § 178.99(b) or § 178.99(c), the licensee complies with the requirements of § 178.102, and the licensee records such loan or rental in the records required to be kept by him under Subpart H of this part.

(b) A club, association, or similar organization temporarily furnishing firearms (whether by loan, rental, or otherwise) to participants in a skeet, trap, target, or similar shooting activity for use at the time and place such activity is held does not, unattended by other circumstances, cause such club, association, or similar organization to be engaged in the business of a dealer in firearms or as engaging in firearms transactions. Therefore, the licensing and recordkeeping requirements contained in this part pertaining to firearms transactions would not apply to this temporary furnishing of firearms for use on premises on which such an activity is conducted.

5. Section 178.102 is revised to read as follows:

**§ 178.102    Sales or deliveries of firearms on and after November 30, 1998.**

(a) *Background check.* Except as provided in paragraph (d) of this section, a licensed importer, licensed manufacturer, or licensed dealer shall not sell, deliver, or transfer a firearm to any other person who is not licensed under this part unless—

(1) Before the completion of the transfer, the licensee has contacted NICS;

(2)(i) NICS informs the licensee that it has no information that receipt of the firearm by the transferee would be in violation of Federal or State law and provides the licensee with a unique identification number; or

(ii) Three business days (meaning days on which State offices are open) have elapsed from the date the licensee contacted NICS and NICS has not notified the licensee that receipt of the firearm by the transferee would be in violation of law; and

(3) The licensee verifies the identity of the transferee by examining the identification document presented in accordance with the provisions of § 178.124(c).

(b) *Unique identification number.* In any transaction for which a licensee receives a unique identification number from NICS, such number shall be recorded on a firearms transaction record, Form 4473, which shall be retained in the records of the licensee in accordance with the provisions of § 178.129. This applies regardless of whether the transaction is approved or denied by NICS, and regardless of whether the firearm is actually transferred.

(c) *Time limitation on NICS checks.* A NICS check conducted in accordance with paragraph (a) of this section may be relied upon by the licensee only for use in a single transaction, and for a period not to exceed 30 calendar days. If the transaction is not completed within the 30-day period, the licensee shall initiate a new NICS check prior to completion of the transfer.

*Example 1.* A purchaser completes the Form 4473 on December 15, 1998, and a NICS check is initiated by the licensee on that date. The licensee is informed by NICS that the information available to the system does not indicate that receipt of the firearm by the transferee would be in violation of law, and a unique identification number is provided. However, the State imposes a 7-day waiting period on all firearms transactions, and the purchaser does not return to pick up the firearm until January 22, 1999. The licensee must conduct another NICS check before transferring the firearm to the purchaser.

*Example 2.* A purchaser completes the Form 4473 on January 25, 1999, and arranges

ATF000744