FILED
2021 Jun-11  PM 01:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

for the purchase of a single firearm. A NICS check is initiated by the licensee on that date. The licensee is informed by NICS that the information available to the system does not indicate that receipt of the firearm by the transferee would be in violation of law, and a unique identification number is provided. The State imposes a 7-day waiting period on all firearms transactions, and the purchaser returns to pick up the firearm on February 15, 1999. Before the licensee completes Section B of the Form 4473, the purchaser decides to purchase an additional firearm. The transfer of these two firearms is considered a single transaction; accordingly, the licensee may add the second firearm to the Form 4473, and transfer that firearm without conducting another NICS check.

*Example 3.* A purchaser completes a Form 4473 on February 15, 1999. The licensee receives a unique identification number from NICS on that date, Section B of the Form 4473 is completed by the licensee, and the firearm is transferred. On February 20, 1999, the purchaser returns to the licensee's premises and wishes to purchase a second firearm. The purchase of the second firearm is a separate transaction; thus, a new NICS check must be initiated by the licensee.

(d) *Exceptions to NICS check.* The provisions of paragraph (a) of this section shall not apply if—

(1) The transferee has presented to the licensee a permit or license that—

(i) Allows the transferee to possess, acquire, or carry a firearm;

(ii) Was issued not more than 5 years earlier by the State in which the transfer is to take place; and

(iii) The law of the State provides that such a permit or license is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by the transferee would be in violation of Federal, State, or local law: *Provided,* That on and after November 30, 1998, the information available to such official includes the NICS;

(2) The firearm is subject to the provisions of the National Firearms Act and has been approved for transfer under 27 CFR Part 179; or

(3) On application of the licensee, in accordance with the provisions of § 178.150, the Director has certified that compliance with paragraph (a)(1) of this section is impracticable.

(e) The document referred to in paragraph (d)(1) of this section (or a copy thereof) shall be retained or the required information from the document shall be recorded on the firearms transaction record in accordance with the provisions of § 178.131.

6. Section 178.124 is amended by revising paragraph (c), by removing "paragraph (c)(1)(ii)" in paragraphs (d) and (e) and adding in its place "paragraph (c)(3)(iii)", and by revising the first sentence in paragraph (f) to read as follows:

§ 178.124   Firearms transaction record.
* * * * *

(c)(1) Prior to making an over-the-counter transfer of a firearm to a nonlicensee who is a resident of the State in which the licensee's business premises is located, the licensed importer, licensed manufacturer, or licensed dealer so transferring the firearm shall obtain a Form 4473 from the transferee showing the transferee's name, sex, residence address (including county or similar political subdivision), date and place of birth; height, weight and race of the transferee; whether the transferee is a citizen of the United States; the transferee's State of residence; and certification by the transferee that the transferee is not prohibited by the Act from transporting or shipping a firearm in interstate or foreign commerce or receiving a firearm which has been shipped or transported in interstate or foreign commerce or possessing a firearm in or affecting commerce.

(2) In order to facilitate the transfer of a firearm and enable NICS to verify the identity of the person acquiring the firearm, ATF Form 4473 also requests certain optional information. This information includes the transferee's social security number and alien registration number (if applicable). Such information may help avoid the possibility of the transferee being misidentified as a felon or other prohibited person.

(3) The licensee shall identify the firearm to be transferred by listing on the Form 4473 the name of the manufacturer, the name of the importer (if any), the type, model, caliber or gauge, and the serial number of the firearm. After the transferee has executed the Form 4473, but before transferring the firearm described on the Form 4473, the licensee:

(i) Shall comply with the requirements of § 178.102 and record on the form the date on which the licensee contacted the NICS, as well as any response provided by the system, including any identification number provided by the system;

(ii) Shall verify the identity of the transferee by examining the identification document (as defined in § 178.11) presented, and shall note on the Form 4473 the type of identification used;

(iii) Shall, in the case of a transferee who is an alien legally in the United States, cause the transferee to present documentation establishing that the transferee is a resident of the State (as defined in § 178.11) in which the licensee's business premises is located, and shall note on the form the documentation used. Examples of acceptable documentation include utility bills or a lease agreement which show that the transferee has resided in the State continuously for at least 90 days prior to the transfer of the firearm; and

(iv) Shall sign and date the form if the licensee does not know or have reasonable cause to believe that the transferee is disqualified by law from receiving the firearm.
* * * * *

(f) Form 4473 shall be submitted, in duplicate, to a licensed importer, licensed manufacturer, or licensed dealer by a transferee who is purchasing or otherwise acquiring a firearm by other than an over-the-counter transaction, who is not subject to the provisions of § 178.102(a), and who is a resident of the State in which the licensee's business premises are located.
* * *

* * * * *

7. Section 178.124a is amended by removing the period at the end of the introductory text of paragraph (e) and adding in its place a colon.

8. Section 178.125(e) is amended by revising the text following the eighth sentence to read as follows:

§ 178.125   Record of receipt and disposition.
* * * * *

(e) *Firearms receipt and disposition by dealers.* * * * The record shall show the date of the sale or other disposition of each firearm, the name and address of the person to whom the firearm is transferred, or the name and license number of the person to whom transferred if such person is a licensee, or the firearms transaction record, Form 4473, serial number if the licensed dealer transferring the firearm serially numbers the Forms 4473 and files them numerically, and the identification number (if any) provided by the NICS. The format required for the record of receipt and disposition of firearms is as follows:

ATF000745

Federal Register / Vol. 63, No. 33 / Thursday, February 19, 1998 / Proposed Rules    8385

## FIREARMS ACQUISITION AND DISPOSITION RECORD

| Description of firearm | | | | | Receipt | | Disposition | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Manufacturer and/or Importer | Model | Serial No. | Type | Caliber or gauge | Date | Name and address or name and license No. | Date | Name | Address or license No. if licensee, or Form 4473 Serial No. if forms 4473 filed numerically | Identification No. provided by NICS (if any) |
| | | | | | | | | | | |

\*   \*   \*   \*   \*

9. Section 178.129 is amended by revising paragraph (b), by redesignating paragraphs (c), (d), and (e) as paragraphs (d), (e), and (f), by adding new paragraph (c), and by revising the parenthetical text at the end of the section to read as follows:

### § 178.129  Record retention.

\*   \*   \*   \*   \*

(b) *Firearms transaction record.* Licensees shall retain each Form 4473 and Form 4473(LV) for a period of not less than 20 years after the date of sale or disposition. Where a licensee has received a transaction number from NICS for a proposed firearms transaction, but the sale, delivery, or transfer of the firearm is not made, the licensee shall record the transaction number on the Form 4473, and retain the Form 4473 for a period of not less than 5 years after the date of the NICS inquiry. Forms 4473 shall be retained in the licensee's records as provided in § 178.124(b): *Provided,* That Forms 4473 with respect to which a sale, delivery or transfer did not take place shall be separately retained in alphabetical (by name of transferee) or chronological (by date of transferee's certification) order.

(c) *Statement of intent to obtain a handgun, reports of multiple sales or other disposition of pistols and revolvers, and reports of theft or loss of firearms.* Licensees shall retain each Form 5300.35 (Statement of Intent to Obtain a Handgun(s)) for a period of not less than 5 years after notice of the intent to obtain the handgun was forwarded to the chief law enforcement officer, as defined in § 178.150(c). Licensees shall retain each copy of Form 3310.4 (Report of Multiple Sale or Other Disposition of Pistols and Revolvers) for a period of not less than 5 years after the date of sale or other disposition. Licensees shall retain each copy of Form 3310.11 (Federal Firearms Licensee Theft/Loss Report) for a period of not less than 5 years after the date the theft or loss was reported to ATF.

\*   \*   \*   \*   \*

(Paragraph (c) approved by the Office of Management and Budget under control numbers 1512–0520, 1512–0006, and 1512–0524; Paragraph (f) approved by the Office of Management and Budget under control number 1512–0526; all other recordkeeping approved by the Office of Management and Budget under control number 1512–0129)

### § 178.130  [Removed]

10. Section 178.130 is removed.

11. Section 178.131 is revised to read as follows:

### § 178.131  Firearms transactions not subject to a NICS check.

(a)(1) A licensed importer, licensed manufacturer, or licensed dealer whose sale, delivery, or transfer of a firearm is made pursuant to the alternative provisions of § 178.102(d) and is not subject to the NICS check prescribed by § 178.102(a) shall maintain the records required by paragraph (a) of this section.

(2) If the transfer is pursuant to a permit or license in accordance with § 178.102(d)(1), the licensee shall either retain a copy of the purchaser's permit or license and attach it to the firearms transaction record, Form 4473, or record on the firearms transaction record, Form 4473, any identifying number, the date of issuance, and the expiration date (if provided) from the permit or license.

(3) If the transfer is pursuant to a certification by ATF in accordance with §§ 178.102(d)(3) and 178.150, the licensee shall maintain the certification as part of the records required to be kept under this subpart and for the period prescribed for the retention of Form 5300.35 in § 178.129(c).

(b) The requirements of this section shall be in addition to any other recordkeeping requirements contained in this part.

12. Section 178.150 is revised to read as follows:

### § 178.150  Alternative to NICS in certain geographical locations.

(a) The provisions of § 178.102(d)(3) shall be applicable when the Director has certified that compliance with the provisions of § 178.102(a)(1) is impracticable because:

(1) The ratio of the number of law enforcement officers of the State in which the transfer is to occur to the number of square miles of land area of the State does not exceed 0.0025;

(2) The business premises of the licensee at which the transfer is to occur are extremely remote in relation to the chief law enforcement officer; and

(3) There is an absence of telecommunications facilities in the geographical area in which the business premises are located.

(b) A licensee who desires to obtain a certification under this section shall submit a written request to the Director. Each request shall be executed under the penalties of perjury and contain information sufficient for the Director to make such certification. Such information shall include statistical data, official reports, or other statements of government agencies pertaining to the ratio of law enforcement officers to the number of square miles of land area of a State and statements of government agencies and private utility companies regarding the absence of telecommunications facilities in the geographical area in which the licensee's business premises are located.

(c) For purposes of this section and § 178.129(c), the "chief law enforcement officer" means the chief of police, the sheriff, or an equivalent officer or the designee of any such individual.

### PART 179—MACHINE GUNS, DESTRUCTIVE DEVICES, AND CERTAIN OTHER FIREARMS

13. The authority citation for 27 CFR Part 179 continues to read as follows:

**Authority:** 26 U.S.C. 7805.

14. Section 179.86 is amended by adding a sentence at the end of the section to read as follows:

### § 179.86  Action on application.

\*   \*   \* In addition to any other records checks that may be conducted to determine whether the transfer, receipt, or possession of a firearm would place the transferee in violation of law, the Director shall contact the National

ATF000746

Instant Criminal Background Check System.

Signed: December 31, 1997.

John W. Magaw,

*Director.*

Approved: January 16, 1998.

John P. Simpson,

*Deputy Assistant Secretary, (Regulatory, Tariff and Trade Enforcement).*

[FR Doc. 98-4215 Filed 2-18-98; 8:45 am]

BILLING CODE 4810-31-P

---

# ENVIRONMENTAL PROTECTION AGENCY

## 40 CFR Part 86

[FRL-5967-8]

**Control of Air Pollution From Motor Vehicles and New Motor Vehicle Engines; Modification of Federal On-Board Diagnostic Regulations for Light-Duty Vehicles and Light-Duty Trucks; Notice of Document Availability**

**AGENCY:** Environmental Protection Agency.

**ACTION:** Proposed rule; document availability.

**SUMMARY:** On May 28, 1997, the U.S. Environmental Protection Agency (EPA or Agency) published a Notice of Proposed Rulemaking (see 62 FR 28932) proposing changes to the federal on-board diagnostics program. One of the proposed changes to the federal OBD program was to indefinitely allow manufacturers to comply with EPA's regulations by demonstrating compliance with the exception of the CARB OBDII anti-tampering provisions and certain evaporative emission monitoring requirements. In that NPRM, the Agency also proposed to update the version of the California OBDII regulations which with manufacturers must comply to a more recently revised version. The NPRM noted that the current version of CARB's regulations were contained in Mail-Out #96-34. However, CARB Mail-Out #96-34 was intended primarily for public comment purposes. In the May 28, 1997 NPRM, the Agency went on to state that, after CARB finalized their regulatory revisions being developed via Mail-Out #96-34, the Agency would, in its final rule, allow compliance with that revised final version provided that relevant portions of that version were acceptable for federal OBD compliance demonstration. The Agency received comments during the public comment period following publication of the

NPRM that this approach of incorporating CARB OBDII regulations would not allow EPA enough time to analyze the final revised version of the CARB OBDII changes for appropriateness and applicability to the federal OBD program. The Agency is in the process of developing the final rulemaking. CARB recently finalized its OBDII changes in CARB Mail-Out #97-24. The Agency has analyzed CARB Mail-Out #97-24 and has determined that it is appropriate for federal OBD compliance and its use for federal OBD presents no regulatory process concerns. This analysis, as well as CARB Mail-Out #97-24 is available in EPA Air Docket A-96-32 (see **ADDRESSES**).

**DATES:** The Docket will remain open until March 23, 1998 for any parties wishing to submit comment on CARB Mail-Out #97-24.

**ADDRESSES:** Materials relevant to this rulemaking are contained in Docket No. A-96-32. The docket is located at The Air Docket, 401 M. Street, SW., Washington, DC 20460, and may be viewed in room M1500 between 8:00 a.m. and 5:30 p.m., Monday through Friday. The telephone number is (202) 260-7548 and the facsimile number is (202) 260-4400. A reasonable fee may be charged by EPA for copying docket material.

Comments must be submitted to Holly Pugliese, Vehicle Programs and Compliance Division, U.S. Environmental Protection Agency, 2565 Plymouth Road, Ann Arbor, Michigan 48105, or Internet e-mail at "pugliese.holly@epamail.epa.gov."

**FOR FURTHER INFORMATION CONTACT:** Holly Pugliese, Telephone 313-668-4288.

Dated: February 9, 1998.

Richard D. Wilson,

*Acting Assistant Administrator for Air and Radiation.*

[FR Doc. 98-4010 Filed 2-18-98; 8:45 am]

BILLING CODE 6560-50-P

---

# ENVIRONMENTAL PROTECTION AGENCY

## 40 CFR Part 444

[FRL-5968-5]

RIN 2040-AD03

**Effluent Limitations Guidelines, Pretreatment Standards, and New Source Performance Standards for the Industrial Waste Combustor Subcategory of the Waste Combustors Point Source Category; Correction, Announcement of Meeting**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Correction, Announcement of Meeting.

**SUMMARY:** In proposed rule 63 FR 6391, in the Federal Register issue of February 6, 1998, make the following correction for the date of the workshop and public hearing. EPA will conduct a workshop and public hearing on the pretreatment standards of the rule on April 1, 1998, from 9:00 a.m. to 10:30 a.m.

The Office of Science and Technology within EPA's Office of Water is announcing the workshop and public hearing to elicit comments on the proposed pretreatment standards for the Industrial Waste Combustor Subcategory of the Waste Combustors Point Source Category (63 FR 6391, February 6, 1998). The meeting will be held in Washington, D.C. on April 1, 1998 at the EPA Headquarters Auditorium. Persons wishing to present formal comments at the public hearing should have a written copy for submittal. All testimony presented or submitted in writing to the designated EPA representative at the public hearing will be considered formal comments on the proposal. In addition, written comments regarding the Industrial Waste Combustors proposal will be accepted until May 7, 1998. Both formal comments from the public hearing and written comments received by EPA will be addressed in the Agency's response to comments and will be part of the public docket for the final rule.

**DATES:** EPA will conduct a workshop and public hearing for the Industrial Waste Combustors Subcategory of the Waste Combustors Point Source Category on April 1, 1998. The Industrial Waste Combustors meeting will be held from 9:00 a.m. to 10:30 a.m.

**ADDRESSES:** The Industrial Waste Combustors meeting will be held in the EPA Headquarters Auditorium, Waterside Mall, 401 M St. SW, Washington, D.C.

ATF000747

58272    Federal Register / Vol. 63, No. 209 / Thursday, October 29, 1998 / Rules and Regulations

# DEPARTMENT OF THE TREASURY

## Bureau of Alcohol, Tobacco and Firearms

## 27 CFR Parts 178 and 179

[T.D. ATF–415; Ref: Notice No. 857; 93F-057P]

RIN 1512–AB67

## Implementation of Public Law 103–159, Relating to the Permanent Provisions of the Brady Handgun Violence Prevention Act

**AGENCY:** Bureau of Alcohol, Tobacco and Firearms (ATF), Department of the Treasury.

**ACTION:** Final rule. Treasury decision.

**SUMMARY:** The Bureau of Alcohol, Tobacco and Firearms (ATF) is amending the regulations to implement the provisions of Public Law 103–159, relating to the permanent provisions of the Brady Handgun Violence Prevention Act. These regulations implement the law by requiring, with some exceptions, a licensed firearms importer, manufacturer, or dealer to contact the national instant criminal background check system (NICS) before transferring any firearm to an unlicensed individual. NICS will advise the licensee whether the system contains any information that the prospective purchaser is prohibited by law from possessing or receiving a firearm.

**DATES:** This rule is effective November 30, 1998.

**FOR FURTHER INFORMATION CONTACT:** James P. Ficaretta, Regulations Division, Bureau of Alcohol, Tobacco and Firearms, 650 Massachusetts Avenue, NW., Washington, DC 20226 (202–927–8230).

**SUPPLEMENTARY INFORMATION:**

## Background

On November 30, 1993, Public Law 103–159 (107 Stat. 1536) was enacted, amending the Gun Control Act of 1968 (GCA), as amended (18 U.S.C. Chapter 44). Title I of Public Law 103–159, the Brady Handgun Violence Prevention Act (the "Brady law" or "Brady"), imposed as an interim measure a waiting period of 5 days before a licensed importer, manufacturer, or dealer may sell, deliver, or transfer a handgun to an unlicensed individual. The waiting period applies only in States without an acceptable alternate system of conducting background checks on handgun purchasers. The interim provisions of the Brady law, 18 U.S.C. 922(s), became effective on February 28, 1994, and cease to apply on November 30, 1998.

### Permanent Provisions of the Brady Law

The permanent provisions of the Brady law provide for the establishment of a national instant criminal background check system ("NICS") that a firearms licensee must contact before transferring any firearm to an unlicensed individual. The law requires that the permanent system be established not later than November 30, 1998. While the interim provisions apply only to handguns, the permanent provisions of the Brady law apply to all firearms. Furthermore, the law provides that the system may take up to three business days to notify the licensee whether receipt of a firearm by the prospective purchaser would be in violation of law.

### National Instant Criminal Background Check System

The Brady law requires that the Attorney General establish a permanent national instant criminal background check system that any licensee may contact, by telephone or by other electronic means in addition to the telephone, for information on whether receipt of a firearm by a prospective transferee would violate Federal or State law. The law requires that the permanent system be established not later than November 30, 1998. It is expected that the NICS will be established by October 31, 1998, although licensees will not be required to contact NICS until November 30, 1998.

Upon establishment of the system, the Attorney General is required to notify each firearms licensee and the chief law enforcement officer of each State of the existence and purpose of NICS and the means to be used to contact NICS. Beginning on the date that is 30 days after the Attorney General notifies firearms licensees that NICS is established, the permanent provisions of Brady, 18 U.S.C. 922(t), become effective.

### Statutory Requirements

Section 922(t) generally makes it unlawful for any licensed firearms importer, manufacturer, or dealer to sell, deliver, or transfer a firearm to an unlicensed individual (transferee), unless—

1. Before the completion of the transfer, the licensee contacts the national instant background check system;

2. The system provides the licensee with a unique identification number signifying that transfer of the firearm would not be in violation of law OR 3 business days (meaning a day on which State offices are open) have elapsed from the date the licensee contacted the system and the system has not notified the licensee that receipt of the firearm by the transferee would be in violation of law; and

3. The licensee verifies the identity of the transferee by examining a valid identification document containing a photograph of the transferee.

### Exceptions to NICS

The statute provides the following exceptions to the national instant background check system:

1. The transferee presents to the licensee a permit which was issued not more than 5 years earlier by the State in which the transfer is to take place and which allows the transferee to possess or acquire a firearm, and the law of the State provides that such a permit is to be issued only after an authorized government official has verified that available information does not indicate that possession of a firearm by the transferee would be in violation of the law;

2. Purchases of firearms which are subject to the National Firearms Act and which have been approved for transfer under 27 CFR Part 179 (Machine Guns, Destructive Devices, and Certain Other Firearms); or

3. Purchases of firearms for which the Secretary has certified that compliance with NICS is impracticable because the ratio of the number of law enforcement officers of the State in which the transfer is to occur to the number of square miles of land area of the State does not exceed 0.0025 (i.e., 25 officers per 10,000 square miles), the premises of the licensee are remote in relation to the chief law enforcement officer of the area, and there is an absence of telecommunications facilities in the geographical area in which the business premises are located.

### Penalties for Noncompliance

Section 922(t) provides that a firearms licensee who transfers a firearm and knowingly fails to comply with the requirements of the law, in a case where compliance would have revealed that the transfer was unlawful, is subject to license suspension or revocation and a civil fine of not more than $5,000.

### Notice of Proposed Rulemaking

On February 19, 1998, ATF published in the Federal Register a notice proposing regulations to implement the requirements placed on Federal firearms licensees by section 922(t) (Notice No. 857; 63 FR 8379). The comment period for Notice No. 857 closed on May 20, 1998.

ATF000749

Federal Register / Vol. 63, No. 209 / Thursday, October 29, 1998 / Rules and Regulations    58273

On June 4, 1998, pursuant to section 103(h) of the Brady law, the Department of Justice issued proposed regulations establishing the methods of operation for NICS, including policies and procedures for ensuring the privacy and security of the system and appeal procedures for individuals who are determined by NICS to be ineligible to purchase a firearm (63 FR 30429, 30430, and 30514). Accordingly, these issues were not addressed in ATF's proposed regulations.

Prior to the close of the comment period, two commenters requested that public hearings be held on the proposed regulations and one commenter requested that the comment period be extended. ATF believes that it is necessary to advise Federal firearms licensees of their responsibilities under the permanent provisions of the Brady law as much in advance of the November 30, 1998, effective date as possible. An extension of the comment period and the holding of public hearings would delay the issuance of final regulations. Furthermore, ATF believes that 90 days is a sufficient amount of time for all interested parties to respond to the issues raised in the notice. Finally, ATF believes that any information received during an extension of the comment period or presented in oral testimony at a public hearing would be similar to that received during the 90-day comment period. Accordingly, ATF is not extending the comment period or holding public hearings on the proposed regulations.

## Analysis of Comments

In response to Notice No. 857, ATF received 8,492 comments, representing 8,779 signatures. Comments were submitted by Federal firearms licensees, licensed firearms collectors, nonlicensed individuals, industry trade groups, and other organizations (e.g., National Association of Arms Shows, Inc., National Pawnbrokers Association, Violence Policy Center, Gun Owners of America, and the National Rifle Association of America), members of Congress, State representatives, and law enforcement officials.

Approximately 125 commenters addressed issues which were outside the scope of the notice. These include user fees for NICS checks, hours of operation that NICS will be available for background checks, how firearms licensees will receive final notification from NICS in the event a background check is delayed, provisions for a toll-free appeal hotline that firearms purchasers can contact in the event of a wrongful denial of a purchase, and

ATF's assurance that in most cases a NICS check will be instantaneous. These issues are being addressed in the Department of Justice's rulemaking proceeding.

Twenty-three commenters expressed opposition to the Brady law and urged its repeal. One hundred sixty-six commenters requested other changes that would also require legislative action. These include eliminating the provision of the law which authorizes NICS to take up to three business days to respond to a request for a background check, restricting the Department of Justice's role in implementing any provisions of the Brady law, exempting State "instant check" and "point of sale check" systems from a NICS check, and prohibiting NICS from containing information on certain categories of persons prohibited from receiving or possessing firearms (such as renunciates and persons discharged from the military under dishonorable conditions). ATF is not adopting any of these comments because they are inconsistent with the language of the statute.

### Long Guns, Antique Firearms, and Licensed Collectors of Curios or Relics

Forty-seven commenters contend that the permanent provisions of the Brady law either do not apply or should not apply to transfers of long guns. Some commenters point out that the title of the statute, the "Brady Handgun Violence Prevention Act," clearly shows that Congress intended the law, both the temporary and permanent provisions, to apply only to handguns. Other commenters argue that since the interim provisions of the Brady law apply only to handguns, it is apparent that the permanent provisions should apply only to handguns as well. These commenters maintain that ATF has exceeded its authority under the Brady law by proposing to require NICS checks for all firearms, including rifles and shotguns.

While the title of the statute is the "Brady Handgun Violence Prevention Act," the plain language of the law clearly states that the permanent provisions apply to all firearms, including rifles and shotguns. In that regard, section 922(t)(1) provides that a Federal firearms licensee "shall not transfer a firearm" to an unlicensed individual unless before the completion of the transfer, the licensee contacts NICS. Section 103(j)(2) of the Brady law provides that the term "firearm" has the meaning prescribed in §921(a) of the GCA. This section defines "firearm," in part, as "any weapon (including a starter gun) which will or is designed to

or may readily be converted to expel a projectile by the action of an explosive; . . ." Thus, the term "firearm" clearly includes rifles and shotguns.

Two commenters inquired whether antique firearms are subject to the permanent provisions of the Brady law. Pursuant to section 921(a)(3), the term "firearm" does not include an antique firearm (as defined in section 921(a)(16)). Accordingly, the transfer of an antique firearm is not subject to the Brady law.

Several commenters requested clarification whether the permanent provisions of the Brady law apply to licensed collectors of curios or relics. The transfer of a firearm by a licensed collector is not subject to section 922(t), since the law by its terms applies only to the transfer of a firearm by a licensed importer, manufacturer, or dealer to an unlicensed person. Furthermore, since the permanent provisions of Brady do not apply to transfers among licensees, the transfer of a curio or relic firearm to a licensed collector is not subject to permanent Brady. However, in transactions involving firearms not classified as curios or relics, the licensed collector has the same status as a nonlicensee. Thus, a licensed collector's acquisition of a firearm that is not a curio or relic from an importer, manufacturer, or dealer is subject to the requirements of permanent Brady.

### Pawn Transactions

In Notice No. 857, ATF advised that the proposed regulations would apply the permanent provisions of the Brady law to the redemption of a pawned firearm. As ATF noted, the Violent Crime Control and Law Enforcement Act of 1994, Public Law 103–322, amended §922(s) of the GCA to specifically exempt transactions involving the return of a handgun to the person from whom it was received. However, no such exemption appears in §922(t).

Three hundred thirty-eight commenters disagreed with ATF's interpretation that the permanent provisions of the Brady law apply to the redemption of a pawned firearm. Many of the commenters argue that the law was intended to apply only to the sale of a firearm and not to pawn transactions involving the redemption of a firearm. A national trade association representing 3,600 pawnbrokers suggested that Congress did not intend to cover the redemption of a pawned firearm, and that the term "transfer" in the Brady law referred to a transfer of title. The commenter further contends that the amendment of §922(s) of the GCA by the Violent Crime Control and

**58274**    Federal Register / Vol. 63, No. 209 / Thursday, October 29, 1998 / Rules and Regulations

Law Enforcement Act of 1994 "indicates their [Congress'] intent to not apply Brady to pawn loans." Several commenters suggested that because pawn loan customers would not have the disposable income to pay for a NICS check, they would instead sell their firearms on the street through unregulated sources.

After carefully considering the arguments raised by the commenters, ATF has concluded that the permanent provisions of the Brady law apply to the redemption of a pawned firearm. Unlike § 922(s) of the GCA, there is no provision in § 922(t) which exempts transactions involving the return of a firearm to the person from whom it was received.

Furthermore, ATF does not agree with the commenters who suggested that the return of a redeemed firearm is not a "transfer" within the meaning of the permanent provisions of the Brady law. The redemption of a pawned firearm has always been treated as a disposition under the GCA, and a Form 4473 has always been required for such redemptions. Furthermore, in *Huddleston* v. *United States*, 415 U.S. 814 (1974), the Supreme Court held that the redemption of a pawned firearm was an acquisition within the meaning of the GCA. Thus, there is no basis for exempting the redemption of a pawned firearm from the permanent provisions of Brady.

### Consignments

ATF has received inquiries regarding the return by a licensee of a consigned firearm to an unlicensed individual. In these cases, the unlicensed individual has delivered a firearm to the licensee for sale. Sales of the firearm are handled in the same manner as other firearm sales. However, if the licensee does not sell the firearm, it may be returned to the unlicensed individual.

ATF has always treated the return of consigned firearms as a transfer or disposition within the meaning of the GCA. The individual to whom the consigned firearms are returned must complete a Form 4473 in the same manner as any unlicensed individual who is acquiring a firearm from a licensee. Accordingly, the final regulations do not provide any exemption for the return of a consigned firearm.

### Repaired and Replacement Firearms

While this issue was not specifically addressed in the proposed rule, approximately 55 comments dealt with the application of permanent Brady to repaired and replacement firearms. Most of those commenters argued that the

return of a repaired firearm to the person from whom it was received should not be considered a "transfer" for purposes of the Brady law.

The notice of proposed rulemaking did not propose that such transactions should be subject to permanent Brady. After carefully considering the comments on this issue, ATF agrees that the return of a repaired or replacement firearm by a licensee is not a "transfer" within the meaning of the Brady law.

Historically, the return of a repaired or replacement firearm by a licensee has been treated in a different fashion from other dispositions under the GCA. Since the enactment of the GCA in 1968, the regulations have provided that a Form 4473 "shall not be required to record the disposition made of a firearm delivered to a licensee for the sole purpose of repair or customizing when such firearm or a replacement firearm is returned to the person from whom received." See 27 CFR 178.124(a).

The final rule does not require NICS checks in any situation in which the transferee is not required to complete a Form 4473. Accordingly, transactions falling within the exemption found in section 178.124(a) are not subject to the requirement for an NICS check.

### Time of NICS Check

As proposed in Notice No. 857, § 178.102(c) provided that a NICS check may be relied upon by the licensee only for use in a single transaction and for a period not to exceed 30 days. If the transaction is not completed within the 30-day period, the licensee must initiate a new NICS check prior to completion of the transfer.

ATF received approximately 40 comments on this proposal. Many commenters objected to the proposal that a separate NICS check must be conducted for each separate transaction. They contend that this requirement is unnecessary and places a burden on both NICS and the licensee. Two commenters stated as follows:

The purpose of the check is to ensure the individual who wishes to purchase a firearm is not a prohibited possessor under the law. In this instance, there is no reason to require a separate NICS check if an individual purchases more than one firearm within a 30 day calendar period.

Many other commenters were concerned about the validity of a NICS check with respect to the return or exchange of a newly purchased firearm. The Brady law provides that a licensee may not transfer a firearm to an unlicensed individual unless, before the completion of the transfer, the licensee contacts NICS. It is clear that the law contemplates that once the transfer is

completed, any additional transfer of a firearm to the same individual would be a separate transfer that would require a separate NICS check. With respect to the return or exchange of a newly purchased firearm, replacement firearms are not subject to a NICS check. However, if the firearm is being returned and exchanged for a different firearm, this constitutes a separate transaction and another NICS check would be required.

Several commenters objected to ATF's proposal that a NICS check should only be valid for 30 calendar days. Three commenters argued that the Brady law does not specify or impose any time limit on the validity of a NICS check. Three other commenters suggested that a NICS check should be acceptable for multiple purchases for 5 years, the same period of time for which a permit is valid.

Another commenter, a trade organization representing approximately 300 firearms dealers, asserted that the proposed 30-day limitation is unreasonable and unnecessary. This commenter states that customers often order firearms and then later return to the licensee's premises to effect the transfer. Based on the experience of its membership, this commenter believed that many transfers do not take place within 30 days, due to the customer's own business commitments or the customer's personal circumstances. Accordingly, this commenter proposed that the NICS check should be valid for a period of 60 days. Another commenter expressed similar concerns, and recommended that the check should be valid for 45 days "to allow normal transactions to occur, given delays and distances normally encountered in firearms sales situations."

As ATF stated in Notice No. 857, it is clear that the Brady law contemplates that the licensee should contact NICS immediately prior to the transfer of a firearm. However, ATF recognized that many States have waiting periods which mandate a delay of up to 10 days before the firearm may be transferred. Thus, the proposed rule provided that a NICS check would be valid in a single transaction for a period of up to 30 days. This would allow the purchaser a reasonable period of time to come back for the firearm in States with lengthy waiting periods.

After carefully considering the comments, ATF has decided not to extend the period in which a NICS check retains its validity. ATF believes that the 30-day period is reasonable in that it allows sufficient time for a purchaser to return to take possession of a firearm. In situations where a

ATF000751

Federal Register / Vol. 63, No. 209 / Thursday, October 29, 1998 / Rules and Regulations    58275

purchaser has ordered a custom-made firearm and a longer delay is required, the licensee may choose to conduct the NICS check after the firearm comes in, rather than at the time that the order is placed. In any event, licensees should try to avoid lengthy delays between the time the NICS check is conducted and the time the firearm is transferred. The 30-day limit provides a concrete limit beyond which the firearm may not be transferred pursuant to a "stale" NICS check.

*Permits*

The Brady law provides that a licensee is not required to initiate a NICS check where the purchaser presents a permit that allows the purchaser to "possess or acquire a firearm." The final rule clarifies that the permit must be valid under State law. Section 178.102(d)(1)(i) of the proposed regulations clarified that this exception includes permits to carry concealed weapons as well as permits specifically authorizing the purchase of a firearm.

Five commenters expressed opposition to ATF's proposal that a permit to carry concealed weapons was included within the permit exemption provided by permanent Brady. Four of the commenters contend that the proposed regulation expands the scope of the exemption and that the clear language of the Brady law limits the exemption to a permit to "possess or acquire" a firearm. Two commenters maintain that this provision of the law applies only to permits specifically authorizing the purchase of a firearm.

Some commenters assert that excepting concealed weapons permit holders from a NICS check would significantly increase the number of exempt firearms transactions. For example, one commenter noted that "[t]his expansion will dramatically increase the possibility of unlawful firearms purchase[s] in part because the varying state systems for revocation of the permits frequently involve considerable delay."

Notwithstanding these comments, it is ATF's conclusion from the plain language of the Brady law that a permit to "possess" a firearm includes a permit to carry concealed weapons. Furthermore, ATF's position in this matter is consistent with that taken with respect to the permit alternative under the interim provisions of the Brady law. Accordingly, § 178.102(d)(1)(i) is being adopted in the final regulations as proposed.

*NICS Checks in Conjunction With the Issuance of Permits*

The law provides that for a permit to qualify as an alternative to the NICS check at the time of transfer, it must have been issued not more than 5 years earlier by the State in which the transfer is to take place. Furthermore, the permit is a valid alternative under permanent Brady only if the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by such other person would be in violation of law.

In construing the language of the statute, the proposed regulations provided that as of November 30, 1998, "the information available to" State officials who issue permits will include a NICS check. The proposed regulations also clarified that if a State did not disqualify all individuals prohibited under Federal law, the permits issued by that State would not be accepted as alternatives under the permanent provisions of the Brady law.

Approximately 3,700 commenters objected to ATF's proposal that the acceptance of permits as alternatives was conditioned upon the State running a NICS check prior to issuing the permit. Most of the commenters contend that the statute does not mandate that State officials conduct a NICS check on all permit applicants. Two commenters argued that "[t]his portion of the proposed regulation violates *Prinz [sic] v. United States*. Here the United States Supreme Court held that "The Federal Government may not compel the States to enact or administer a federal regulatory program.'"

The issuance of regulations setting standards for permits that meet the criteria of the statute in no way implicates Tenth Amendment or Federalism concerns. Neither the Brady law nor the regulations require States to establish or administer permit systems at all. However, the law does set forth certain standards that State permits must meet in order to be recognized as valid Brady alternatives.

As of November 30, 1998, "the information available to" State officials will include NICS. As indicated in Notice No. 857, a NICS check will provide a more extensive background check of the purchaser than other record systems containing only criminal records. NICS will include records from the Department of Defense concerning dishonorable discharges, records from the Department of State regarding individuals who have renounced United

States citizenship, and other information not available in criminal records.

Accordingly, § 178.102(d)(1)(iii) is adopted as proposed.

One commenter noted that Notice No. 857 was silent with respect to State permits issued prior to the effective date of the permanent provisions of the Brady law. Prior to November 30, 1998, the information "available to" State permit officials did not include NICS. Permits issued prior to that date that were recognized by ATF as valid alternatives under interim Brady will continue to be recognized as valid alternatives after November 30, 1998, notwithstanding the fact that no NICS check was conducted prior to the issuance of the permits. These permits will be "grandfathered" for a period not to exceed 5 years or the duration of the permit, whichever is shorter.

*Firearms Transaction Record (Form 4473)*

In general, the regulations provide that prior to the transfer of a firearm to a prospective purchaser, the buyer must complete, sign, and date a firearms transaction record, Form 4473. The form requests certain information, including the transferee's name, sex, height, weight, race, residence address, date of birth, and place of birth. In Notice No. 857, ATF proposed amending the regulations to solicit additional optional information about the purchaser, including the transferee's social security number, to facilitate the transfer of a firearm (§ 178.124(c)(2)). ATF noted in Notice No. 857 that ATF Form 5300.35, Statement of Intent to Obtain a Handgun (Brady form), currently requests the purchaser's social security number as optional information.

Approximately 8,000 commenters addressed this proposal. Twenty-five commenters misunderstood the proposal and were under the impression the proposed regulation was requiring purchasers to provide their social security number on Form 4473. The remaining commenters expressed other concerns and urged ATF to withdraw the proposed regulation. Many commenters contend that requesting the purchaser's social security number violates the individual's right to privacy. The commenters are also concerned about the possible misuse of the information, including the establishment of a national registry of firearms owners. Other commenters are concerned that the request for a purchaser's social security number as additional optional information may eventually become a requirement. These commenters also believe that a firearm

ATF000752

**58276**    Federal Register / Vol. 63, No. 209 / Thursday, October 29, 1998 / Rules and Regulations

transfer may be unnecessarily delayed or the purchaser subjected to additional scrutiny if the social security number is not provided.

The final regulations will include the purchaser's social security number on Form 4473 as optional information. The social security number is a unique identifier. ATF believes that providing this information on Form 4473 will facilitate the transfer of a firearm. As discussed in Notice No. 857, ATF believes this additional information will help minimize the misidentification of firearms purchasers as felons or other prohibited persons whose receipt and possession would violate the law. For example, by providing this information the transferee might avoid confusion with a prohibited buyer who has the same name and date of birth as the transferee. Nevertheless, providing the social security number on Form 4473 is optional under the proposed regulation and the purchaser is not required to provide such information.

With respect to the commenters' concern regarding the establishment of a national registry of firearms owners, ATF would note that the registration of firearms, firearms owners, or firearms transactions or dispositions is specifically prohibited by 18 U.S.C. 926(a) and section 103(i) of the Brady law. ATF would further note that Forms 4473 are maintained by dealers, not the Federal Government.

In Notice No. 857, ATF proposed that in any transaction for which a licensee receives a unique identification number from NICS, such number will be recorded on Form 4473 and retained in the records of the licensee, regardless of whether the transaction is approved or denied by NICS, and regardless of whether the firearm is actually transferred (27 CFR 178.102(b)). Several commenters objected to the proposed requirement that licensees retain copies of Form 4473 for denied NICS checks or where there is no transfer of a firearm. The commenters argue that this requirement is unnecessary and only serves to increase the paperwork burden on licensees. ATF disagrees with the commenters and finds the requirement to be both necessary and warranted. As explained in the notice, requiring licensees to retain Form 4473 in all cases will enable ATF to determine compliance with the law by licensees and purchasers. Accordingly, the regulation is being adopted as proposed. The final rule clarifies that the transaction number provided by NICS shall include either a NICS transaction number or, in States where the State is recognized as a point of contact for

NICS checks, a State transaction number.

Seven commenters contend that the Brady law requires Form 4473 to be destroyed after each firearm transaction. Specifically, § 922(t)(2)(C) provides that if a NICS check indicates receipt of a firearm by a prospective purchaser would not violate Federal or State law,

[T]he system shall . . . destroy all records of the system with respect to the call (other than the identifying number and the date the number was assigned) and all records of the system relating to the person or the transfer.

The Brady law does not require the Form 4473 to be destroyed after each firearm transaction. The "system" mentioned in the law refers to the national instant background check system (NICS) established by the Attorney General. In addition, the Department of Justice has issued proposed regulations with respect to the destruction of records in the NICS (AG Order No. 2158–98; June 4, 1998, 63 FR 30430).

Several commenters misinterpreted § 178.124(c)(3) as proposed by ATF. It is their understanding that the regulation requires licensees to provide NICS with information regarding the firearm being transferred (e.g., type, model, caliber or gauge, etc.). The commenters are opposed to NICS collecting and maintaining such information. The proposed regulation was not intended to require licensees to provide NICS with specific information about an individual's firearms purchase. For clarification purposes, ATF is amending § 178.124(c) and revising Form 4473 to specify that information about the firearm being transferred (e.g., the name of the manufacturer, the type, model, caliber, etc.) will be recorded on the Form 4473 by the licensee after the completion of the NICS check.

*Civil Penalties*

As explained in the notice of proposed rulemaking, section 922(t)(5) of the GCA provides that a licensee who knowingly transfers a firearm and knowingly fails to comply with the provisions of section 922(t)(1) with respect to the transfer may be subject to revocation or suspension of the license for up to 6 months and a civil fine of not more than $5,000. This provision applies only where at the time that the transferee most recently proposed the transfer, the national instant criminal background check system was operating and information was available to the system demonstrating that the transferee's receipt of a firearm would violate section 922(g) or (n) of the GCA, or State law.

The GCA, 18 U.S.C. 923(e), already provides ATF with authority to revoke a firearms license, after notice and opportunity for hearing, where the licensee has willfully violated any of the provisions of the GCA or the regulations issued thereunder. Furthermore, section 923(f) provides that revocation actions are subject to *de novo* judicial review by the district court in which the licensee resides or has his principal place of business.

ATF is amending Subpart E of Part 178 to provide that the existing procedures for revocation of licenses will also apply to the suspension and revocation of licenses under section 922(t)(5), as well as the imposition of a civil fine under this provision. The final rule also clarifies that such actions are subject to *de novo* judicial review by the district court.

*Miscellaneous*

Approximately 3,700 commenters expressed opposition to proposed § 178.97(b). This section requires a NICS check where a club or similar organization temporarily furnishes firearms to participants in a trap or similar shooting activity for use off the premises. The commenters contend that this requirement "is neither required by, nor is consistent with, the statute." ATF views the activity mentioned above in the same manner as the loan or rental of a firearm to a nonlicensee for temporary use off the licensed premises for lawful sporting purposes. In that regard, § 178.97(a) requires the licensee to record the transaction in his permanent records of acquisition and disposition and on Form 4473. It is ATF's position that such a transfer is subject to the requirements of the Brady law. Accordingly, § 178.97(b) is adopted in the final regulations as proposed.

ATF is amending § 178.102(c) by revising Example 2 at the end of the section to clarify that a firearms transaction is completed when the licensee executes the Form 4473 and the firearm is transferred to the purchaser. Some commenters believe the wording of the proposed regulation is confusing and implies that a firearms transaction is completed when the licensee executes the Form 4473, regardless of when the actual transfer of the firearm takes place.

The proposed regulation in § 178.125(e) would have required dealers to record in their records of disposition the identification number provided by NICS. ATF has determined that requirement is unnecessary since the final regulations require licensees to record the unique identification number provided by NICS on Form 4473 and to retain each Form 4473 for a period of

ATF000753

Federal Register / Vol. 63, No. 209 / Thursday, October 29, 1998 / Rules and Regulations   58277

not less than 20 years after the date of sale or disposition. Accordingly, ATF is not amending the regulation.

Finally, section 178.125a(a) is being amended to provide that licensees are not required to comply with the provisions of § 178.102 when selling firearms from the licensee's personal collection, provided that the licensee has maintained the firearm as part of his or her personal collection for at least one year.

## Executive Order 12866

It has been determined that this final rule is not a significant regulatory action as defined in Executive Order 12866. Therefore, a Regulatory Assessment is not required.

## Regulatory Flexibility Act

It is hereby certified that this final rule will not have a significant economic impact on a substantial number of small entities. The revenue effects of this rulemaking on small businesses flow directly from the underlying statute. Likewise, any secondary or incidental effects, and any reporting, recordkeeping, or other compliance burdens flow directly from the statute. Accordingly, a regulatory flexibility analysis is not required.

## Paperwork Reduction Act

The collections of information contained in this final regulation have been reviewed and approved by the Office of Management and Budget in accordance with the requirements of the Paperwork Reduction Act (44 U.S.C. 3507(d)) under control number 1512–0544. Other collections of information contained in this final rule have been approved under control numbers: 1512–0520, 1512–0006, and 1512–0524 (§ 178.129(c)) and 1512–0129 and 1512–0526 (§ 178.129(d), (e), and (f)). An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid control number assigned by the Office of Management and Budget.

The collections of information in this final rule are in 27 CFR 178.102, 178.124(c), 178.129(b), 178.131, and 178.150. This information is required to implement the provisions of Public Law 103–159, relating to the permanent provisions of the Brady Handgun Violence Prevention Act. The collections of information are required to ensure compliance with the law. The likely respondents and/or recordkeepers are individuals and businesses.

*Estimated number of respondents:* 106,000.

*Estimated burden hours:* 1 hour.

However, the above mentioned regulations which implement the Brady law require amendments to ATF Form 4473. In order to prevent a duplication of burden hours, the burden hours that are associated with the collections of information in these regulations (1,136,266 hours) will be reported under OMB control number 1512–0129, the Supporting Statement for ATF Form 4473, Firearms Transaction Record, Part I. The following paragraphs explain the additional burden hours.

Section 178.102 requires, with some exceptions, licensees to contact NICS before transferring any firearm to an unlicensed individual. The estimated total annual reporting and/or recordkeeping burden associated with this requirement is 824,000 hours. Section 178.124(c) requires licensees to record on Form 4473 the date the licensee contacts NICS and any identification number provided by NICS. The licensee must also verify the identity of the person acquiring the firearm by examining an identification document presented by the transferee. Form 4473 will include certain optional information about the purchaser, such as the person's social security number and alien registration number. Section 178.131 requires licensees to maintain certain records for firearms transactions not subject to a NICS check. The estimated total annual reporting and/or recordkeeping burden associated with §§ 178.124(c) and 178.131 is 308,266 hours. Section 178.129(b) requires licensees to retain a completed Form 4473 for a period of not less than 5 years where the transfer of a firearm is not made. The estimated total annual recordkeeping burden associated with this requirement is 4,000 hours. Section 178.150 provides for an alternative to NICS in certain geographical locations. Licensees must submit a written application to the Director containing certain information. The same requirement currently applies to the waiting period provision of the Brady law for transfers of handguns. Since this requirement was established in 1994, no licensee has qualified for an exception from the provisions of Brady based on geographical location. As such, ATF does not believe that there is any reporting and/or recordkeeping burden associated with the requirements of § 178.150 with regard to NICS.

Certain collections of information contained in § 178.129(b), previously approved under control numbers 1512–0520, 1512–0006, and 1512–0524, are merely being redesignated as § 178.129(c) in this final rule. Similarly, the collections of information in § 178.129(c), (d), and (e), previously

approved under control numbers 1512–0129 and 1512–0526, are being redesignated as § 178.129(d), (e), and (f) in the final regulation.

Comments concerning the accuracy of these burden estimates and suggestions for reducing the burden should be directed to the Chief, Document Services Branch, Room 3110, Bureau of Alcohol, Tobacco and Firearms, 650 Massachusetts Avenue, NW, Washington, DC 20226, and to the Office of Management and Budget, Attention: Desk Officer for the Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms, Office of Information and Regulatory Affairs, Washington, DC 20503.

## Disclosure

Copies of the notice of proposed rulemaking, all written comments, and this final rule will be available for public inspection during normal business hours at: ATF Public Reading Room, Room 6480, 650 Massachusetts Avenue, NW., Washington, DC.

*Drafting Information.* The author of this document is James P. Ficaretta, Regulations Division, Bureau of Alcohol, Tobacco and Firearms.

## List of Subjects

### Part 178

Administrative practice and procedure, Arms and ammunition, Authority delegations, Customs duties and inspection, Exports, Imports, Military personnel, Penalties, Reporting requirements, Research, Seizures and forfeitures, and Transportation.

### Part 179

Administrative practice and procedure, Arms and munitions, Authority delegations, Customs duties and inspection, Exports, Imports, Military personnel, Penalties, Reporting requirements, Research, Seizures and forfeitures, and Transportation.

## Authority and Issuance

For the reasons discussed in the preamble, ATF amends 27 CFR Parts 178 and 179 as follows:

## PART 178—COMMERCE IN FIREARMS AND AMMUNITION

**Paragraph 1.** The authority citation for 27 CFR Part 178 continues to read as follows:

**Authority:** 5 U.S.C. 552(a); 18 U.S.C. 847, 921–930; 44 U.S.C. 3504(h).

**Par. 2.** Section 178.11 is amended by adding a definition for "NICS" to read as follows:

ATF000754

58278    Federal Register / Vol. 63, No. 209 / Thursday, October 29, 1998 / Rules and Regulations

## § 178.11  Meaning of terms.

\*    \*    \*    \*    \*

NICS. The National Instant Criminal Background Check System established by the Attorney General pursuant to 18 U.S.C. 922(t).

\*    \*    \*    \*    \*

Par. 3. Section 178.73 is revised to read as follows:

### § 178.73  Notice of revocation, suspension, or imposition of civil fine.

(a) *Basis for action.* Whenever the regional director (compliance) has reason to believe that a licensee has willfully violated any provision of the Act or this part, a notice of revocation of the license, ATF Form 4500, may be issued. In addition, a notice of revocation, suspension, or imposition of a civil fine may be issued on ATF Form 4500 whenever the regional director (compliance) has reason to believe that a licensee has knowingly transferred a firearm to an unlicensed person and knowingly failed to comply with the requirements of 18 U.S.C. 922(t)(1) with respect to the transfer and, at the time that the transferee most recently proposed the transfer, the national instant criminal background check system was operating and information was available to the system demonstrating that the transferee's receipt of a firearm would violate 18 U.S.C. 922(g) or 922(n) or State law.

(b) *Issuance of notice.* The notice shall set forth the matters of fact constituting the violations specified, dates, places, and the sections of law and regulations violated. The regional director (compliance) shall afford the licensee 15 days from the date of receipt of the notice in which to request a hearing prior to suspension or revocation of the license, or imposition of a civil fine. If the licensee does not file a timely request for a hearing, the regional director (compliance) shall issue a final notice of suspension or revocation and/or imposition of a civil fine on ATF Form 4501, as provided in § 178.74.

Par. 4. Section 178.74 is revised to read as follows:

### § 178.74  Request for hearing after notice of suspension, revocation, or imposition of civil fine.

If a licensee desires a hearing after receipt of a notice of suspension or revocation of a license, or imposition of a civil fine, the licensee shall file a request, in duplicate, with the regional director (compliance) within 15 days after receipt of the notice of suspension or revocation of a license, or imposition of a civil fine. On receipt of such request, the regional director (compliance) shall, as expeditiously as

possible, make necessary arrangements for the hearing and advise the licensee of the date, time, location and the name of the officer before whom the hearing will be held. Such notification shall be made no less than 10 days in advance of the date set for the hearing. On conclusion of the hearing and consideration of all the relevant presentations made by the licensee or the licensee's representative, the regional director (compliance) shall render a decision and shall prepare a brief summary of the findings and conclusions on which the decision is based. If the decision is that the license should be revoked, or, in actions under 18 U.S.C. 922(t)(5), that the license should be revoked or suspended, and/or that a civil fine should be imposed, a certified copy of the summary shall be furnished to the licensee with the final notice of revocation, suspension, or imposition of a civil fine on ATF Form 4501. If the decision is that the license should not be revoked, or in actions under 18 U.S.C. 922(t)(5), that the license should not be revoked or suspended, and a civil fine should not be imposed, the licensee shall be notified in writing.

Par. 5. Section 178.78 is revised to read as follows:

### § 178.78  Operations by licensee after notice.

In any case where denial, suspension, or revocation proceedings are pending before the Bureau of Alcohol, Tobacco and Firearms, or notice of denial, suspension, or revocation has been served on the licensee and he has filed timely request for a hearing, the license in the possession of the licensee shall remain in effect even though such license has expired, or the suspension or revocation date specified in the notice of revocation on Form 4500 served on the licensee has passed: *Provided,* That with respect to a license that has expired, the licensee has timely filed an application for the renewal of his license. If a licensee is dissatisfied with a posthearing decision revoking or suspending the license or denying the application or imposing a civil fine, as the case may be, he may, pursuant to 18 U.S.C. 923(f)(3), within 60 days after receipt of the final notice denying the application or revoking or suspending the license or imposing a civil fine, file a petition for judicial review of such action. Such petition should be filed with the U.S. district court for the district in which the applicant or licensee resides or has his principal place of business. In such case, when the regional director (compliance) finds that justice so requires, he may

postpone the effective date of suspension or revocation of a license or authorize continued operations under the expired license, as applicable, pending judicial review.

Par. 6. Section 178.96 is amended by revising the first sentence in paragraph (b), and by revising paragraph (c) to read as follows:

### § 178.96  Out-of-State and mail order sales.

\*    \*    \*    \*    \*

(b) A licensed importer, licensed manufacturer, or licensed dealer may sell a firearm that is not subject to the provisions of § 178.102(a) to a nonlicensee who does not appear in person at the licensee's business premises if the nonlicensee is a resident of the same State in which the licensee's business premises are located, and the nonlicensee furnishes to the licensee the firearms transaction record, Form 4473, required by § 178.124. \*    \*    \*

(c)(1) A licensed importer, licensed manufacturer, or licensed dealer may sell or deliver a rifle or shotgun, and a licensed collector may sell or deliver a rifle or shotgun that is a curio or relic to a nonlicensed resident of a State other than the State in which the licensee's place of business is located if—

(i) The purchaser meets with the licensee in person at the licensee's premises to accomplish the transfer, sale, and delivery of the rifle or shotgun;

(ii) The licensed importer, licensed manufacturer, or licensed dealer complies with the provisions of § 178.102;

(iii) The purchaser furnishes to the licensed importer, licensed manufacturer, or licensed dealer the firearms transaction record, Form 4473, required by § 178.124; and

(iv) The sale, delivery, and receipt of the rifle or shotgun fully comply with the legal conditions of sale in both such States.

(2) For purposes of paragraph (c) of this section, any licensed manufacturer, licensed importer, or licensed dealer is presumed, in the absence of evidence to the contrary, to have had actual knowledge of the State laws and published ordinances of both such States.

Par. 7. Section 178.97 is revised to read as follows:

### § 178.97  Loan or rental of firearms.

(a) A licensee may lend or rent a firearm to any person for temporary use off the premises of the licensee for lawful sporting purposes: *Provided,* That the delivery of the firearm to such person is not prohibited by § 178.99(b) or § 178.99(c), the licensee complies

ATF000755

with the requirements of § 178.102, and the licensee records such loan or rental in the records required to be kept by him under Subpart H of this part.

(b) A club, association, or similar organization temporarily furnishing firearms (whether by loan, rental, or otherwise) to participants in a skeet, trap, target, or similar shooting activity for use at the time and place such activity is held does not, unattended by other circumstances, cause such club, association, or similar organization to be engaged in the business of a dealer in firearms or as engaging in firearms transactions. Therefore, licensing and recordkeeping requirements contained in this part pertaining to firearms transactions would not apply to this temporary furnishing of firearms for use on premises on which such an activity is conducted.

Par. 8. Section 178.102 is revised to read as follows:

§ 178.102   Sales or deliveries of firearms on and after November 30, 1998.

(a) *Background check.* Except as provided in paragraph (d) of this section, a licensed importer, licensed manufacturer, or licensed dealer (the licensee) shall not sell, deliver, or transfer a firearm to any other person who is not licensed under this part unless the licensee meets the following requirements:

(1) Before the completion of the transfer, the licensee has contacted NICS;

(2)(i) NICS informs the licensee that it has no information that receipt of the firearm by the transferee would be in violation of Federal or State law and provides the licensee with a unique identification number; or

(ii) Three business days (meaning days on which State offices are open) have elapsed from the date the licensee contacted NICS and NICS has not notified the licensee that receipt of the firearm by the transferee would be in violation of law; and

(3) The licensee verifies the identity of the transferee by examining the identification document presented in accordance with the provisions of § 178.124(c).

*Example for paragraph (a).* A licensee contacts NICS on Thursday, and gets a "delayed" response. The licensee does not get a further response from NICS. If State offices are not open on Saturday and Sunday, 3 business days would have elapsed on the following Tuesday. The licensee may transfer the firearm on the next day, Wednesday.

(b) *Transaction number.* In any transaction for which a licensee receives a transaction number from NICS (which shall include either a NICS transaction number or, in States where the State is recognized as a point of contact for NICS checks, a State transaction number), such number shall be recorded on a firearms transaction record, Form 4473, which shall be retained in the records of the licensee in accordance with the provisions of § 178.129. This applies regardless of whether the transaction is approved or denied by NICS, and regardless of whether the firearm is actually transferred.

(c) *Time limitation on NICS checks.* A NICS check conducted in accordance with paragraph (a) of this section may be relied upon by the licensee only for use in a single transaction, and for a period not to exceed 30 calendar days from the date that NICS was initially contacted. If the transaction is not completed within the 30-day period, the licensee shall initiate a new NICS check prior to completion of the transfer.

*Example 1 for paragraph (c).* A purchaser completes the Form 4473 on December 15, 1998, and a NICS check is initiated by the licensee on that date. The licensee is informed by NICS that the information available to the system does not indicate that receipt of the firearm by the transferee would be in violation of law, and a unique identification number is provided. However, the State imposes a 7-day waiting period on all firearms transactions, and the purchaser does not return to pick up the firearm until January 22, 1999. The licensee must conduct another NICS check before transferring the firearm to the purchaser.

*Example 2 for paragraph (c).* A purchaser completes the Form 4473 on January 25, 1999, and arranges for the purchase of a single firearm. A NICS check is initiated by the licensee on that date. The licensee is informed by NICS that the information available to the system does not indicate that receipt of the firearm by the transferee would be in violation of law, and a unique identification number is provided. The State imposes a 7-day waiting period on all firearms transactions, and the purchaser returns to pick up the firearm on February 15, 1999. Before the licensee executes the Form 4473, and the firearm is transferred, the purchaser decides to purchase an additional firearm. The transfer of these two firearms is considered a single transaction; accordingly, the licensee may add the second firearm to the Form 4473, and transfer that firearm without conducting another NICS check.

*Example 3 for paragraph (c).* A purchaser completes a Form 4473 on February 15, 1999. The licensee receives a unique identification number from NICS on that date, the Form 4473 is executed by the licensee, and the firearm is transferred. On February 20, 1999, the purchaser returns to the licensee's premises and wishes to purchase a second firearm. The purchase of the second firearm is a separate transaction; thus, a new NICS check must be initiated by the licensee.

(d) *Exceptions to NICS check.* The provisions of paragraph (a) of this section shall not apply if—

(1) The transferee has presented to the licensee a valid permit or license that—

(i) Allows the transferee to possess, acquire, or carry a firearm;

(ii) Was issued not more than 5 years earlier by the State in which the transfer is to take place; and

(iii) The law of the State provides that such a permit or license is to be issued only after an authorized government official has verified that the information available to such official does not indicate that possession of a firearm by the transferee would be in violation of Federal, State, or local law: *Provided,* That on and after November 30, 1998, the information available to such official includes the NICS;

(2) The firearm is subject to the provisions of the National Firearms Act and has been approved for transfer under 27 CFR Part 179; or

(3) On application of the licensee, in accordance with the provisions of § 178.150, the Director has certified that compliance with paragraph (a)(1) of this section is impracticable.

(e) The document referred to in paragraph (d)(1) of this section (or a copy thereof) shall be retained or the required information from the document shall be recorded on the firearms transaction record in accordance with the provisions of § 178.131.

(Approved by the Office of Management and Budget under control number 1512–0544)

Par. 9. Section 178.124 is amended by revising paragraph (c), by removing "paragraph (c)(1)(ii)" in paragraphs (d) and (e) and adding in its place "paragraph (c)(3)(ii)", by revising the first sentence in paragraph (f), and by revising the parenthetical text at the end of the section to read as follows:

§ 178.124   Firearms transaction record.
*    *    *    *    *

(c)(1) Prior to making an over-the-counter transfer of a firearm to a nonlicensee who is a resident of the State in which the licensee's business premises is located, the licensed importer, licensed manufacturer, or licensed dealer so transferring the firearm shall obtain a Form 4473 from the transferee showing the transferee's name, sex, residence address (including county or similar political subdivision), date and place of birth; height, weight and race of the transferee; whether the transferee is a citizen of the United States; the transferee's State of residence; and certification by the transferee that the transferee is not prohibited by the Act from transporting or shipping a firearm in interstate or foreign commerce or receiving a firearm which has been shipped or transported

ATF000756

in interstate or foreign commerce or possessing a firearm in or affecting commerce.

(2) In order to facilitate the transfer of a firearm and enable NICS to verify the identity of the person acquiring the firearm, ATF Form 4473 also requests certain optional information. This information includes the transferee's social security number and alien registration number (if applicable). Such information may help avoid the possibility of the transferee being misidentified as a felon or other prohibited person.

(3) After the transferee has executed the Form 4473, the licensee:

(i) Shall verify the identity of the transferee by examining the identification document (as defined in § 178.11) presented, and shall note on the Form 4473 the type of identification used;

(ii) Shall, in the case of a transferee who is an alien legally in the United States, cause the transferee to present documentation establishing that the transferee is a resident of the State (as defined in § 178.11) in which the licensee's business premises is located, and shall note on the form the documentation used. Examples of acceptable documentation include utility bills or a lease agreement which show that the transferee has resided in the State continuously for at least 90 days prior to the transfer of the firearm; and

(iii) Shall comply with the requirements of § 178.102 and record on the form the date on which the licensee contacted the NICS, as well as any response provided by the system, including any identification number provided by the system.

(4) The licensee shall identify the firearm to be transferred by listing on the Form 4473 the name of the manufacturer, the name of the importer (if any), the type, model, caliber or gauge, and the serial number of the firearm.

(5) The licensee shall sign and date the form if the licensee does not know or have reasonable cause to believe that the transferee is disqualified by law from receiving the firearm and transfer the firearm described on the Form 4473.

*  *  *  *  *

(f) Form 4473 shall be submitted, in duplicate, to a licensed importer, licensed manufacturer, or licensed dealer by a transferee who is purchasing or otherwise acquiring a firearm by other than an over-the-counter transaction, who is not subject to the provisions of § 178.102(a), and who is a resident of the State in which the licensee's business premises are located.

*  *  *

*  *  *  *  *

(Paragraph (c) approved by the Office of Management and Budget under control number 1512-0544; paragraph (f) approved by the Office of Management and Budget under control number 1512-0130; all other recordkeeping approved by the Office of Management and Budget under control number 1512-0129)

### § 178.124a  [Amended]

Par. 10. Section 178.124a is amended by removing the period at the end of the introductory text of paragraph (e) and adding in its place a colon.

### § 178.125a  [Amended]

Par. 11. Section 178.125a is amended by adding "comply with the provisions of § 178.102 or" after the phrase "is not required to" in the introductory text of paragraph (a).

Par. 12. Section 178.129 is amended by revising paragraph (b), by redesignating paragraphs (c), (d), and (e) as paragraphs (d), (e), and (f), by adding new paragraph (c), and by revising the parenthetical text at the end of the section to read as follows:

### § 178.129  Record retention.

*  *  *  *  *

(b) *Firearms transaction record.* Licensees shall retain each Form 4473 and Form 4473(LV) for a period of not less than 20 years after the date of sale or disposition. Where a licensee has initiated a NICS check for a proposed firearms transaction, but the sale, delivery, or transfer of the firearm is not made, the licensee shall record any transaction number on the Form 4473, and retain the Form 4473 for a period of not less than 5 years after the date of the NICS inquiry. Forms 4473 shall be retained in the licensee's records as provided in § 178.124(b): *Provided,* That Forms 4473 with respect to which a sale, delivery or transfer did not take place shall be separately retained in alphabetical (by name of transferee) or chronological (by date of transferee's certification) order.

(c) *Statement of intent to obtain a handgun, reports of multiple sales or other disposition of pistols and revolvers, and reports of theft or loss of firearms.* Licensees shall retain each Form 5300.35 (Statement of Intent to Obtain a Handgun(s)) for a period of not less than 5 years after notice of the intent to obtain the handgun was forwarded to the chief law enforcement officer, as defined in § 178.150(c). Licensees shall retain each copy of Form 3310.4 (Report of Multiple Sale or Other Disposition of Pistols and Revolvers) for a period of not less than 5 years after the

date of sale or other disposition. Licensees shall retain each copy of Form 3310.11 (Federal Firearms Licensee Theft/Loss Report) for a period of not less than 5 years after the date the theft or loss was reported to ATF.

*  *  *  *  *

(Paragraph (b) approved by the Office of Management and Budget under control number 1512-0544; Paragraph (c) approved by the Office of Management and Budget under control numbers 1512-0520, 1512-0006, and 1512-0524; Paragraph (f) approved by the Office of Management and Budget under control number 1512-0526; all other recordkeeping approved by the Office of Management and Budget under control number 1512-0129)

### § 178.130  [Removed]

Par. 13. Section 178.130 is removed.

Par. 14. Section 178.131 is revised to read as follows:

### § 178.131  Firearms transactions not subject to a NICS check.

(a)(1) A licensed importer, licensed manufacturer, or licensed dealer whose sale, delivery, or transfer of a firearm is made pursuant to the alternative provisions of § 178.102(d) and is not subject to the NICS check prescribed by § 178.102(a) shall maintain the records required by paragraph (a) of this section.

(2) If the transfer is pursuant to a permit or license in accordance with § 178.102(d)(1), the licensee shall either retain a copy of the purchaser's permit or license and attach it to the firearms transaction record, Form 4473, or record on the firearms transaction record, Form 4473, any identifying number, the date of issuance, and the expiration date (if provided) from the permit or license.

(3) If the transfer is pursuant to a certification by ATF in accordance with §§ 178.102(d)(3) and 178.150, the licensee shall maintain the certification as part of the records required to be kept under this subpart and for the period prescribed for the retention of Form 5300.35 in § 178.129(c).

(b) The requirements of this section shall be in addition to any other recordkeeping requirements contained in this part.

(Approved by the Office of Management and Budget under control number 1512-0544)

Par. 15. Section 178.150 is revised to read as follows:

### § 178.150  Alternative to NICS in certain geographical locations.

(a) The provisions of § 178.102(d)(3) shall be applicable when the Director has certified that compliance with the provisions of § 178.102(a)(1) is impracticable because:

(1) The ratio of the number of law enforcement officers of the State in

Federal Register / Vol. 63, No. 209 / Thursday, October 29, 1998 / Rules and Regulations    58281

which the transfer is to occur to the number of square miles of land area of the State does not exceed 0.0025;

(2) The business premises of the licensee at which the transfer is to occur are extremely remote in relation to the chief law enforcement officer; and

(3) There is an absence of telecommunications facilities in the geographical area in which the business premises are located.

(b) A licensee who desires to obtain a certification under this section shall submit a written request to the Director. Each request shall be executed under the penalties of perjury and contain information sufficient for the Director to make such certification. Such information shall include statistical data, official reports, or other statements of government agencies pertaining to the ratio of law enforcement officers to the number of square miles of land area of a State and statements of government agencies and private utility companies regarding the absence of telecommunications facilities in the geographical area in which the licensee's business premises are located.

(c) For purposes of this section and § 178.129(c), the "chief law enforcement officer" means the chief of police, the sheriff, or an equivalent officer or the designee of any such individual.

(Approved by the Office of Management and Budget under control number 1512–0544)

## PART 179—MACHINE GUNS, DESTRUCTIVE DEVICES, AND CERTAIN OTHER FIREARMS

Par. 16. The authority citation for 27 CFR part 179 continues to read as follows:

Authority: 26 U.S.C. 7805.

Par. 17. Section 179.86 is amended by adding a sentence at the end of the section to read as follows:

### § 179.86   Action on application.

* * * In addition to any other records checks that may be conducted to determine whether the transfer, receipt, or possession of a firearm would place the transferee in violation of law, the Director shall contact the National Instant Criminal Background Check System.

Signed: October 1, 1998.

John W. Magaw,
*Director.*

Approved: October 16, 1998.

John P. Simpson,
*Deputy Assistant Secretary (Regulatory, Tariff and Trade Enforcement).*

[FR Doc. 98–28986 Filed 10–28–98; 8:45 am]

BILLING CODE 4810–31–P

ATF000758

**DEPARTMENT OF THE TREASURY**
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
WASHINGTON, DC 20226

JUN 26 1998

**ASSISTANT
DIRECTOR**

7 2800

F:PD:NFC
5300

MEMORANDUM TO:   All Special Agents in Charge
                 All District Directors
                 All Assistant Chief Counsels

        FROM:    Assistant Director
                 (Firearms, Explosives and Arson)

     SUBJECT:    Implementation of Permanent Provisions
                 of the Brady Law

On November 30, 1998, the permanent provisions of the Brady law, 18 U.S.C. § 922(t), will go into effect. As of that date, the interim provisions of the Brady law, 18 U.S.C. § 922(s), will no longer apply. By the end of the summer, ATF must be in a position to advise Federal firearms licensees (FFLs) how they should comply with permanent Brady.

In order to ensure that we can accurately advise FFLs of their responsibilities under permanent Brady, we are requesting that you make contact with officials in all States under your jurisdiction. The purpose of the contact is to ensure that the States are aware of the permanent Brady requirements, and determine how the States plan to implement those requirements if they have agreed to be a Point of Contact (POC) State for the Federal Bureau of Investigation (FBI). In addition, all States should be queried to determine if their requirements for issuing permits will qualify the permit as a Brady alternative.

WWW.ATF.TREAS.GOV

1-16

ATF000759

- 2 -

All Special Agents in Charge
All District Directors
All Assistant Chief Counsels

## Background

Pursuant to the permanent provisions of the Brady law, licensees will contact the National Instant Criminal Background Check System (NICS) prior to transferring a firearm to an unlicensed individual. NICS will deny the transfer if the system contains information indicating that the individual's receipt of a firearm would place the transferee in violation of Federal or State law. The Criminal Justice Information System (CJIS) Division of the FBI will administer NICS.

The permanent provisions of the Brady law differ in several significant respects from the interim provisions of the Brady law. There will be no Brady form; nor will there be a five-day waiting period mandated by law. Instead, licensees will generally get an "instant" response from NICS. However, the law provides that NICS may take up to 3 business days to provide a response. After that, if the licensee receives no response from NICS, the transfer may occur.

The permanent provisions of the Brady law will apply to all firearms, not just handguns. There will be no State "instant check" or "point of sale" check alternatives to the permanent provisions of Brady; however, many "instant check" and "point of sale" check States will participate with the FBI as POCs for purposes of conducting NICS checks. The major alternative to a NICS check under the permanent provisions of the Brady law is a permit that complies with the conditions set forth in the statute.

## State Liaison Efforts

For the past several years, ATF has been working with the FBI, State governments and Federal firearms licensees to ensure a smooth transition period. On February 19, 1998, ATF published proposed regulations to implement the permanent provisions of the Brady law. ATF has conducted

2=16

ATF000760

- 3 -

All Special Agents in Charge
All District Directors
All Assistant Chief Counsels

several Federal firearms licensee seminars devoted primarily to Brady topics; the FBI has attended some of these seminars, and will be attending several more.

Many States have agreed to serve as POCs for the FBI. A POC State would conduct a NICS check, as well as any other background check required by State law, before approving the transfer of a firearm. This would eliminate the need for FFLs to make a separate NICS check through the FBI for each firearms transfer. In some States, the State will be a POC for all firearms; in other States, the State will serve as a POC for handguns but not long guns.

As previously noted, the major alternative provided under permanent Brady is a permit that satisfies the requirements of the statute. In order to qualify as an alternative under permanent Brady, State law must require that the permit is to be issued only after an authorized government official has verified that the information "available" to such official does not indicate that the person's possession or receipt of a firearm would be in violation of law. The information "available" to State permit officials on and after November 30, 1998, will include the information provided by NICS. Accordingly, the proposed regulations provide that permits issued after on and after that date will qualify as alternatives only if the State authorities conduct NICS checks prior to issuing permits. Furthermore, the proposed regulations provide that under permanent Brady, a permit will not qualify as an alternative if the State would allow the issuance of a permit to anyone whose possession or receipt of a firearm would be in violation of Federal or State law.

Prior to November 30, 1998, ATF and the FBI will advise Federal firearms licensees how to contact NICS. It will be the FBI's responsibility to provide licensees with the technical information regarding NICS. The FBI's regulations will address the following issues: the fees charged for NICS checks; registration, password and other security requirements for contacting NICS; alternative electronic means for contacting NICS; and retention and routine uses of NICS records. However, it will be ATF's responsibility to

9-16

ATF000761

- 4 -

All Special Agents in Charge
All District Directors
All Assistant Chief Counsels

determine whether firearms permits issued by the various States will constitute exceptions to the NICS requirement. Furthermore, we will need information as to how the POC States are conducting operations, so that we can advise licensees how to operate in compliance with permanent Brady.

## Brady Report

Pursuant to the above, Assistant Chief Counsels, Special Agents in Charge and District Directors should coordinate their efforts and provide a single report (emanating from the Special Agent in Charge) detailing the results of their contacts with State officials to the Firearms Programs Division no later than July 31, 1998. For each State, we would like to know whether there will be any permits that will qualify as alternatives under the permanent provisions of the Brady law. If a State has agreed to be a POC, we need to know what procedures it intends to follow.

To assist you in this matter, we have attached two checklist forms; the first is for the States that will be participating as POCs; the second one is for States that have any type of firearms permit. In addition, we have attached for your reference a list of the FBI's NICS contacts with State governments, a partial ATF list of State contacts, and an FBI list of the anticipated POC status of each State.

In compiling the answers to the questions on these checklists, it will not be enough to simply examine the laws of the various States; it will also be necessary to discuss several issues with the State representatives. We believe that the checklist forms are self-explanatory.

Finally, the Justice Department has raised the issue of whether ATF should condition the status of alternative permits on whether the State has an effective mechanism of ensuring the revocation of permits if the permit holder incurs firearms disabilities after the issuance of the permit. The proposed regulations do not address this issue, and ATF has not yet officially responded to this proposal. However, we would appreciate any information you could get

4-16

ATF000762

- 5' -

All Special Agents in Charge
All District Directors
All Assistant Chief Counsels

as to whether State permits that would otherwise qualify as alternatives under permanent Brady would be affected by this type of requirement.

Thank you for your assistance in this matter. We appreciate your valuable input on Brady issues, and encourage you to continue providing us with feedback on issues that come up in the course of your discussions with the States, the FBI, or Federal firearms licensees. If you have any questions regarding this memorandum, please contact Nancy Cook at (202) 927-8056.

Jimmy Wooten

Attachments

5-16

ATF000763



**DEPARTMENT OF THE TREASURY**
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
WASHINGTON, DC 20226

CHIEF
COUNSEL

OCT 8 1998

CC-53,868   FE:JNS

MEMORANDUM TO:   Acting Assistant General Counsel
                 (Enforcement)

        FROM:   Chief Counsel

     SUBJECT:   Qualification of State Permits as
                Alternatives to NICS Check under the Brady
                Law

This is in response to your request for an opinion on
whether the Bureau of Alcohol, Tobacco and Firearms (ATF)
has legal authority to adopt a comment submitted by the
Justice Department's Office of Policy Development (OPD).
OPD has suggested that ATF amend its proposed regulations
implementing the Brady law, to impose an additional
condition to a permit's qualification as an alternative
under Brady.  OPD suggests that ATF condition the
acceptance of permits as Brady alternatives on the
existence of an appropriate permit revocation mechanism
under State law.

The condition proposed by OPD is not found in the law, and
there is no indication that Congress intended that such a
condition be imposed.  Accordingly, it is our conclusion
that ATF lacks authority to adopt OPD's comment.

### Background

The permanent provisions of the Brady law, 18 U.S.C.
§ 922(t), provide for an "instant check" of criminal
records (as well as other records) by the National Instant
Criminal Background Check System ("NICS").  Certain State
permits are recognized as alternatives under permanent
Brady.  The permit alternative under permanent Brady is
virtually identical to the permit alternative that was
provided under interim Brady.

- 2 -

Acting Assistant General Counsel
(Enforcement)


The pertinent provisions of the Brady law, 18 U.S.C.
§ 922(t)(3), provide an alternative to the NICS check
requirement imposed by section 922(t)(1) in cases
where:

    (A)(i) such other person has presented to the
licensee a permit that --
        (I)  allows such other person to possess
    or acquire a firearm; and
        (II) was issued not more than 5 years
    earlier by the State in which the transfer is to
    take place; and
    (ii) the law of the State provides that such
    a permit is to be issued only after an authorized
    government official has verified that the
    information available to such official does not
    indicate that possession of a firearm by such
    other person would be in violation of law. . . .

In interpreting this provision, ATF has been careful to
ensure that there is parity between the background check
required of permittees and the NICS check undergone by
other purchasers of firearms.  In its proposed regulations,
ATF announced that as of November 30, 1998, the
"information available" to State permit officials would
include a NICS check; accordingly a permit issued on or
after November 30, 1998, would not be a valid alternative
unless a NICS check was done prior to its issuance.
Furthermore, ATF proposed that the permit would not
constitute an alternative under permanent Brady unless the
State would disqualify anyone prohibited under Federal law.

Thus, a permit issued on or after November 30, 1998,
will qualify as an alternative only after the permittee has
been subjected to the same background check that he would
get if he attempted to purchase a firearm without a permit.
The only difference is that the law provides that the
permit may be good for up to five years.

### OPD Comment

OPD has suggested that ATF should adopt a further condition
for State permits.  It is OPD's suggestion that a permit
should qualify "only if the state establishes a mechanism

ATF000765

- 3 -

Acting Assistant General Counsel
(Enforcement)


designed to identify and revoke permits that have been
issued to persons who become subsequently disqualified."
The proposed amendment further provides that "[a]
revocation mechanism will check whether a transferee who
possesses a permit or license has been subsequently
disqualified under the law of the State from possessing a
license or permit."

OPD's comment provides several examples of acceptable State
systems.  In each of these systems, the State not only goes
to extraordinary lengths to find out whether holders of
permits have incurred subsequent disabilities, but the
State also ensures that the Federal firearms licensee will
have this information when the permit is presented to him.[1]

## Legal Issues

While the Department of Justice did not provide a formal
legal opinion as to ATF's statutory authority on this
matter, OPD has provided an informal legal memorandum that
concluded that ATF had authority to impose this requirement
through a regulation.  The OPD memorandum cites several
cases holding that ATF has authority to revoke ATF permits
even in the absence of specific statutory or regulatory
authority to do so.  These cases are not on point.  No one
questions that the States may have authority to revoke
their own firearms permits; the question is whether the
Brady law provides ATF with the authority to condition the
acceptance of permits as Brady alternatives on the
existence of an appropriate revocation mechanism.

---

[1] In the first example, the State automatically cross-
references its concealed weapons permit database with its
criminal history records *once per week*.  The second example
is a State that requires dealers to check with the State's
permit authority prior to selling a firearm.  In the third
example, the State requires that the permit database be
checked each time that a person purchases a firearm.  In
the fourth example, the State cross-references its criminal
records with its permit database on a quarterly basis, and
then notifies firearms licensees that permits are no longer
valid.

ATF000766

- 4 -

Acting Assistant General Counsel
(Enforcement)


OPD also suggests that it is logical to interpret the statute as providing an exemption only for permits that are "valid." ATF agrees that it is a logical reading of the statute that a permit must be "valid" under State law in order to qualify as an alternative under permanent Brady. Thus, forged permits would clearly not qualify. Furthermore, permits are not valid beyond their expiration date. ATF's final rule, which is currently in review at the Department, explicitly states that a permit must be "valid" and the preamble explains that this means that the permit must be valid under State law.

OPD's comment, however, goes beyond requiring that the permit must be valid under *State law* - it assumes that a permit is not a valid alternative under *the Brady law* unless the State takes certain steps to revoke permits where a person has incurred firearms disabilities. Essentially, OPD is interpreting the term "permit" in the Brady law to mean a valid permit in a State where the State has an appropriate revocation mechanism that would satisfy OPD's fairly stringent criteria. We can find no basis for such an interpretation in the Brady law.

OPD also suggests that any ATF regulation on this issue would be entitled to deference under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). We disagree. The Supreme Court has held that "if the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-843. If, on the other hand, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843.

A reviewing court does not get to Chevron deference, therefore, unless and until it determines that Congress's purpose and intent on the question at issue cannot be judicially ascertained. "Only if, after this investigation, we conclude that Congress either had no intent on the matter, or that Congress's purpose and intent regarding the matter is ultimately unclear, do we reach the issue of Chevron deference." Timex V.I., Inc. v. United

ATF000767

- 5 -

Acting Assistant General Counsel
(Enforcement)


States, No. 97-1520, 1998 U.S. App. LEXIS 23734 (Fed. Cir.
September 23, 1998). See also Muwwakkil v. Office of
Personnel Management, 18 F.3d 921, 925 (Fed. Cir. 1994).

To ascertain whether Congress had an intention on the
question at issue, it is necessary to employ the
"traditional tools of statutory construction." Chevron,
467 U.S. at 843 n. 9. The first and foremost tool to be
used is the statute's text, giving it its plain meaning.
See VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d
1574, 1579 (Fed. Cir. 1990), cert. denied, 499 U.S. 922
(1991). Because the text of the statute is Congress's
final expression of its intent, if the text answers the
questions, that is the end of the matter. Muwwakkil,
18 F.3d at 924. If, on the other hand, the statute's text
does not explicitly address the precise issue, the court
does not at that point simply defer to the agency; instead,
the court will look to other "tools" including the
statute's structure, canons of statutory construction, and
legislative history. See Dunn v. Commodity Futures Trading
Comm'n, 519 U.S. 465 (1997).

In the case at hand, there is nothing in the statutory
language that indicates that Congress intended the term
"permit" to apply only to permits issued by States that had
appropriate revocation mechanisms.[2] Instead, the plain
language of the statute provides that a permit will qualify
as an alternative if it meets the conditions set forth in
the law. There is no mention at all of State revocation
procedures. Furthermore, there is no grant of discretion
to the agency to develop standards for such permits.

Even if it were not clear that the plain language of the
statute ruled out the interpretation suggested by OPD, the
traditional canons of statutory construction would
similarly weigh against the interpretation advocated by

---

[2.] There may be rational policy reasons behind a regulation
which would impose such a requirement. However, as the
court noted in Orca Bay Seafoods v. Northwest Truck Sales,
Inc., 32 F.3d 433, 436 (9th Cir. 1994), in striking down
regulations issued by the Secretary of Transportation,
"rationality is not enough. The Secretary needed
authority."

ATF000768

- 6 -

Acting Assistant General Counsel
(Enforcement)


OPD.  A general rule of statutory construction states that
"the mention of one thing implies the exclusion of another;
expressio unius est exclusio alterius."  United States v.
Castro, 837 F.2d 441, 442 (11th Cir. 1988), quoting 73 Am.
Jur. 2d, Statutes, sec. 211, at 405.

It should be noted that "this principle has its limits and
exceptions and cannot apply when the legislative history
and context are contrary to such a reading of the statute."
837 F.2d at 443.  However, in the case at hand, there is
no legislative history that would be contrary to such a
result.  Furthermore, the law specifically provides that
permits will be accepted as valid alternatives if they meet
the standards set forth in the statute.  Thus, the plain
language of the law is contrary to the result advocated by
OPD.  Clearly, an agency will not be entitled to Chevron
deference where its interpretation of a law is contrary to
the plain language of the law.  See, e.g., Muwwakkil,
18 F.3d at 925.


It should be noted that in National Rifle Association v.
Brady, 914 F.2d 475, 484 (4th Cir. 1990), cert. denied,
499 U.S. 959 (1991), the Fourth Circuit set aside two ATF
regulations implementing the Firearms Owners Protection Act
of 1986.  With respect to one of the regulations that was
set aside, the law required licensed collectors to maintain
records of the "receipt, sale, or other disposition" of
curio and relic firearms.  The implementing regulation
required collectors to inventory the curios or relics
possessed in their collection and record the same prior to
commencing or continuing a firearms curio or relic
collection.

The Fourth Circuit held that the regulation impermissibly
expanded on the requirements of the statute.  The court
explained as follows:

> The statute makes no mention of any requirement
> that licensed collectors inventory their pre-
> existing collections and record their contents.
> Rather it makes clear that records need only be
> kept concerning the receipt and disposition of
> curios and relics.  The Secretary's regulation
> creates a whole new recordkeeping requirement

ATF000769