UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **SANDRA LEE,** *et al.*, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Case No.:5:20-cv-632-LCB |
| | ) |
| **U.S. DEPARTMENT OF JUSTICE,** | ) |
| *et al.*, | ) |
| | ) |
| **Defendants.** | |

## ORDER

Plaintiffs Sandra Lee ("Lee"), Gun Owners of America, Inc. ("GOA") and Gun Owners Foundation ("GOF") contend the Bureau of Alcohol Tobacco and Firearms' ("ATF") July 22, 2019 Public Service Announcement ("PSA") violates the Administrative Procedures Act ("APA"). Specifically, Plaintiffs contend that the ATF's directive to Alabama federal firearms licensees ("FFL's") to stop accepting Alabama conceal-carry permits ("CCP's') in lieu of conducting backgrounds checks for firearms sales is, among other things, arbitrary and capricious.

This matter is before the Court on the Parties' Cross Motions for Summary Judgment (Docs. 22 & 26). Because each Plaintiff lacks standing, this case is **DISMISSED WITHOUT PREJUDICE**.

I.  **Factual Background**

The facts before the Court are largely undisputed. The parties filed the certified administrative record to this case on June 11, 2021. (Doc. 36).

**A. History of the Brady Handgun Violence Prevention Act**

In 1993, Congress amended the Gun Control Act via the Brady Handgun Violence Prevention Act. Among other things, the Brady Act prohibits FFL's from selling firearms to a person "where the purchase or possession by such person of such firearm would be in violation of any State law[.]" 18 U.S.C. §922(b)(2). Similarly, under §922(d), the Act forbids the sale (or any other disposition) of a firearm to a person that:

> (1) is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
>
> (2) is a fugitive from justice;
>
> (3) is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));
>
> (4) has been adjudicated as a mental defective or has been committed to any mental institution;
>
> (5) who, being an alien—
>
> (A) is illegally or unlawfully in the United States; or
>
> (B) except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26)));

(6) [who] has been discharged from the Armed Forces under dishonorable conditions;

(7) who, having been a citizen of the United States, has renounced his citizenship;

(8) is subject to a court order that restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child, except that this paragraph shall only apply to a court order that—

(A) was issued after a hearing of which such person received actual notice, and at which such person had the opportunity to participate; and

(B)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; or

(9) has been convicted in any court of a misdemeanor crime of domestic violence.

To ensure that prohibited persons can't purchase firearms, §922(t)(1) of the Brady Act requires FFL's to submit possible purchasers' personal information to an FBI national instant background check system ("NICS") background check. This requires FFL's to ask prospective purchasers to complete an ATF Form 4473, which elicits the buyer's personal information and propounds questions to certify that the customer is qualified to possess a firearm. If the purchaser refuses to fill out the form, the FFL is prohibited from knowingly transferring him or her a firearm.

One exception to §922(t)(1)'s NICS background check requirement is found in §922(t)(3). That provision provides that FFL's need not subject a customer to an NICS background check if the he or she: (1) presents a permit to a an FFL; (2) that permit allows the purchaser to possess or purchase a firearm; (3) the permit is not more than five years old; and (4) the law of the State provides that such a permit is to be issued only after an authorized government official has verified that the information available to such officials does not indicate that possession of a firearm by such other person would be in violation of law. §922(t)(3).

The ATF promulgated additional regulations regarding the required NICS background check and exemption in 2002. According to these regulations, NICS background checks were to include a mandatory Immigration Alien Query ("IAQ") in connection with "regulations implementing the statutory provisions prohibiting the possession or receipt of firearms by nonimmigrant aliens." (Doc. 36-3 at 3)

### B. Alabama acquires an NICS exemption

In 2013, Alabama enacted Ala. Code §13A-11-75 which provides, in relevant part, the following:

> (b) Prior to issuance or renewal of a permit, the sheriff shall contact available local, state, and federal criminal history data banks, including the National Instant Criminal Background Check System, to determine whether possession of a firearm by an applicant would be a violation of state or federal law.
>
> (d) If a person who is not a United States citizen applies for a permit under this section, the sheriff shall conduct an Immigration Alien Query

through U.S. Immigration and Customs Enforcement . . . A person who is unlawfully present in this State may not be issued a permit under this section.

§13A-11-75(b), (d).

On September 28, 2015, Alabama's then-Attorney General Luther Strange sent a letter to the ATF requesting confirmation that §13A-11-75 satisfied §922(t)(3)'s exemption requirements. (Doc. 36-2 at 1–2). The ATF responded on February 24, 2016, in an "Open Letter to All Alabama Federal Firearms Licensees," agreeing with Attorney General Strange's assessment. *Id*. at 4.

### C. The FBI finds Alabama out-of-compliance

In 2016, the FBI commenced an NICS audit of each Alabama sheriff's department to ensure each office was submitting the required personal information of every CCP applicant to the NICS. (Doc. 36-2 at 6). Results from June of that year uncovered that 45 of Alabama's 67 counties were not submitting applicant information to NICS background checks when they sought a CCP. *Id*. The audit also revealed that some Alabama counties didn't conduct IAQ searches or request information necessary to run the IAQ search. For instance, the audit found that Jefferson County, Alabama's CCP application form didn't ask applicants for their alien numbers in direct contravention to the mandatory IAQ regulations. (*See e.g.,* Doc. 36-2 at 41; Doc. 36-3 at 13).

The FBI conducted several additional audits from 2017–2019. Each audit found several Alabama counties failed to comply with the directives found in Ala. Code §13A-11-75, and that some counties lacked the resources to contact the law enforcement databases necessary to comply with those directives. (*See e.g.,* Doc. 36-2 at 6, 20, 71–72; Doc. 36-3 at 17).

Correspondence between the FBI and the ATF in the administrative record reveal that, at the beginning of 2019, the ATF was considering revoking Alabama's §922(t)(3) exemption. (Doc. 36-2 at 73–74). On July 22, 2019, the ATF followed through on that thought with its PSA to all Alabama FFL's. (Doc. 36-3 at 12). The ATF's PSA identified several shortcomings in Alabama's background check system. Paramount among them were: (1) failing to submit CCP applicants' information to the NICS prior to issuing the CCP; (2) failing to submit CCP applicants' information to the IAQ; and (3) issuing permits to prohibited persons as a consequence. *Id*. These failures, the ATF stated, warranted a recission of Alabama's §922(t)(3) exemption. (Doc.1-3 at 2).

### D. Lee's call to Mr. Big Guns

Sandra Lee lives in Huntsville, Alabama, and she's a member of GOA. (Doc. 1 at 19–20). She held a valid Alabama CCP when she filed this action. (Doc. 1 at 19).

On April 30, 2020, Lee called Mr. Big Guns, an FFL in Huntsville, Alabama, and told the sales associate on the other end of the line that she wanted purchase a firearm there using her Alabama CCP instead of submitting to an NICS background check. (Doc. 1 at 19–20). Lee was told that she couldn't use her CCP to purchase a gun in accordance with the ATF's July 22, 2019 PSA. *Id.* Instead, as an FFL, Mr. Big Guns was required to ask Lee to fill out an ATF Form 4473, and then submit that form for an NICS check. *Id.*

Lee, GOA, and GOF filed this lawsuit on May 5, 2020, alleging the ATF's July 22, 2019 PSA violates the Administrative Procedures Act because the ATF's interpretation and application of 18 U.S.C. §922(t)(3) is arbitrary and capricious; the PSA exceeds the ATF's statutory authority; and the ATF failed to provide notice and comment before issuing the PSA.

## Standard of Review

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because the material facts of this case are largely undisputed, it's well-suited for summary judgment. *Smith v. United States Citizenship & Immigr. Serv.*, 2021 WL 148741, at *3 (N.D. Ala. Jan. 15, 2021) (citing *Mahon v. U.S. Department of Agriculture*, 485 F.3d 1247, 1253 (11th Cir. 2007)).

Agency actions challenged under the Administrative Procedures Act may be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). To determine whether the agency decision violated the APA, the reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541-42 (11th Cir. 1996) (quoting *North Buckhead Civic Association v. Skinner*, 903 F.2d 1533, 1538-40 (11th Cir. 1990)).

## Discussion

### I. Lee lacks standing.

It's axiomatic that a plaintiff must have standing to bring a claim against a defendant. And a court must determine whether a plaintiff has standing before addressing the merits of any claim before it. *Sierra v. City of Hallandale Beach, Florida*, 996 F.3d 1110, 1113 (11th Cir. 2021) (citing *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020)). Standing requires that a plaintiff has: (1) suffered an injury-in-fact; (2) that her injury be traceable to the defendant's conduct; and (3) that the injury is one capable of redress by a favorable decision from the Court. *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

To show she has suffered an injury-in-fact, a plaintiff must establish that she has suffered "an invasion of a legally protected interest which is (a) concrete and

particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 1113 (quoting *Lujan*, 504 U.S. at 560). An injury need not be tangible to be concrete. It must only be real or "actually exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016); *Crawford v. United States Department of Treasury*, 868 F.3d 438, 455 (6th Cir. 2017) (collecting authorities and noting that abstract concerns, injuries, and problems do not suffice for standing). Particularity requires that the injury affect the plaintiff in a personal and individual way. *Sierra* at 1113 (quoting *Spokeo at* 1548). A plaintiff cannot bring a claim simply because she has suffered – in some indefinite way – something common to the public. *Lujan*, 504 U.S. at 574 (quoting *Ex parte Lévitt*, 302 U.S. 633 (1937)).

Next, a plaintiff must show an actual or imminent injury. *Sierra* at 1113 (quoting *Lujan*, 504 U.S. at 560). Where a plaintiff seeks injunctive relief rather than damages, she must "adequately demonstrate[] that a *future* injury is imminent—that there is 'a sufficient likelihood that he [or she] will be affected by the allegedly unlawful conduct in the future.'" *Id.* (quoting *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004)).

Finally, when considering whether a party has standing to pursue a claim based on agency action, the content of the agency action itself plays a pivotal role. If a plaintiff claiming an injury is not an object of the agency action, it is incredibly hard for her to bring a claim. *Lujan* at 562.

9

### A. Lee presents no injury-in-fact: she wasn't denied a firearm nor delayed in a purchase.

First, the Court notes that Lee isn't an object of the 2019 PSA. That announcement's contents show that the objects of regulation were Alabama FFL's and Alabama law enforcement officials responsible for issuing CCP's. This is clear from the PSA's language highlighting law enforcement's purported shortcomings and the directive that Alabama FFL's no longer accept CCP's as an alternative to an NICS check:

> Because county sheriffs have issued CCP permits without completing a full NICS check, firearms have been transferred to felons and other prohibited individuals in violation of federal law, thereby creating a substantial public safety concern.  For this reason, the standards set forth in the Brady law require us to find that Alabama's CCP permits no longer qualify as a NICS check alternative.  In the interest of public safety, and effective immediately, FFLs in Alabama may no longer accept CCP permits as an alternative to a NICS check.  Unless another exception applies, a NICS check must be conducted whenever you transfer a firearm to an unlicensed person even if the individual presents an unexpired CCP permit

(Doc. 1-3 at 1–2) (emphasis removed). Thus, "much more" is required of Lee and the plaintiff-organizations to show that they have standing to bring this action. *Lujan* at 562.

On standing, the Court is satisfied that the PSA rescinded the §922(t)(3) exemption, which precluded Lee from purchasing a firearm the way she wanted to and requires her to submit to an NICS background check. An individual's ability to

purchase a firearm without unjustified delay or denial represents a cognizable interest for standing. *Robinson v, Sessions*, 721 Fed. Appx. 20, 24 (2d Cir. 2018).

Lee's contentions, however, differ slightly from the above proposition. In her own words, the harm she and others suffer isn't just that they "cannot obtain a firearm." (Doc. 29 at 15 n. 10). She also insists that she and others are harmed by "submission to a NICS check itself. In other words, the harm alleged here is that ATF's interference with use of Alabama CCPs in lieu of NICS check [sic], not simply the resulting in ability [sic] to obtain a firearm." *Id*. Taking Lee at her word, the Court understands her harm to be two-fold: (1) being refused a firearm; and (2) the requirement to undergo an NICS background check.

Lee did not experience an injury-in-fact from being refused a firearm. In fact, Lee hasn't adduced any facts showing that she was denied a firearm. Rather, the record shows that she was refused the ability to purchase a firearm the way she wanted. As a law-abiding and non-prohibited person (Doc. 1 at 3) Lee had the ability to purchase a firearm from any Alabama FFL in accordance with §922(t)(1). And there's no record evidence that Mr. Big Guns would've refused to do business with her had she completed the required Form. While filling out the ATF 4473 Form and waiting a few minutes for her information to clear may have represented "a brief, inconsequential annoyance," it wouldn't constitute an outright denial. *Salcedo v. Hanna*, 936 F.3d 1162, 1172 (11th Cir. 2019).

To be clear, the Court isn't holding that Lee lacks standing because she injured herself – that her refusal to fill out an ATF Form 4473 precludes her from bringing these claims. Such an argument might "prove too much." *Breland v. United States (In re Breland)*, 989 F.3d 919, 922 n. 2 (11th Cir. 2021) ("[I]t's no answer to say that Breland voluntarily entered Chapter 11 bankruptcy – and . . . brought this injury upon himself."). Instead, the Court merely finds that Lee wasn't completely denied the opportunity to purchase a firearm. Only her preferred method of purchase was off the table.

As for Lee's contention that she faces an imminent injury-in-fact due to a mandatory NICS background check should she purchase a firearm from an Alabama FFL, the Court is unpersuaded. Such an argument has been found unavailing elsewhere and the Court finds that reasoning persuasive. *See Robinson*, 721 Fed. Appx. at 23–24 (finding plaintiffs suffered no injury-in-fact where their information was submitted to NICS background check and cross-referenced across several databases and none were delayed or denied a firearm purchase).[1]

---

[1] The parties' briefing reveals one case directly on-point with the case sub judice, *Roberts v. U.S. Department of Justice, et al.*, 2020 WL 7396316 (2020). There, the district court addressed the merits of the plaintiffs' claims, finding each meritless. *Roberts* never addressed whether the plaintiffs had standing to bring their claims. But implicit in reaching the merits of those claims is the conclusion that the plaintiffs had standing to raise them. The Court disagrees with the *Roberts* decision only to the extent that it concluded the plaintiffs had standing to bring the action.

## II.    Neither association has standing to challenge the ATF's PSA.

An organization has standing to enforce the rights of its members when its members would otherwise have standing to sue individually, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1342 (11th Cir. 2014) (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,* 528 U.S. 167, 181 (2000)).

Based on a review of the affidavit submitted by Erich M. Pratt, Senior Vice President of GOA and GOF, the Court is satisfied that the interests at stake in this case are germane to the purposes and goals of those organizations and that the relief sought does not require individual participation of their members. (Doc. 1 at 22–23). Thus, the only question before the Court is whether the members of these organizations would have standing to sue. They do not. As identified in Erich M. Pratt's affidavit, the only purported injury-in-fact the members of each organization are likely to face is "an unnecessary federal NICS background check[.]" (Doc. 1 at 23). However, for the reasons outlined above, this does not constitute a concrete injury-in-fact. Accordingly, GOA and GOF lack standing.

## CONCLUSION

Accordingly, for the reasons outlined above, Plaintiffs' Motion for Summary Judgment (Doc. 22) is **DENIED** and Defendants' Motion for Summary Judgment

(Doc. 26) is **GRANTED.** This case is **DISMISSED WITHOUT PREJUDICE** and the Clerk of Court is directed to **CLOSE** the file.

**DONE** and **ORDERED** August 12, 2021.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE